**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:16-CV-00024-JHM**

**PHOENIX PROCESS EQUIPMENT CO.**                                                    **PLAINTIFF**

**V.**

**CAPITAL EQUIPMENT & TRADING**                                                      **DEFENDANTS**
**CORPORATION, et al**

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on motions to dismiss by Defendant Capital Equipment & Trading Corporation [DN 46] and Defendants Coralina Engineering, LLC and Alexander Chudnovets [DN 47]. Fully briefed, these matters are ripe for decision.

**I.   BACKGROUND**

Plaintiff Phoenix Process Equipment Co. (hereinafter "Phoenix") is a company based in Louisville, Kentucky, that designs, engineers, manufactures, and services machinery and equipment used for recycling water that has been used to wash coal. Phoenix has had its products distributed in Russia, Ukraine, and other eastern European nations since 1997 by an assortment of different companies that all have used some variation of the trade name CETCO. As relevant to this case, Phoenix entered into a distribution agreement with Defendant Capital Equipment & Technology Corporation (hereinafter "Technology Corporation"), a Delaware corporation, in May 2009 that was to last at least three years. This distribution agreement was signed on Technology Corporation's behalf by Defendant Alexander Chudnovets, the company's CEO who also owned ninety percent of the company's stock. Chudnovets signed the agreement after meeting with employees of Phoenix at its facilities in Kentucky and Indiana.

Technology Corporation was dissolved under the laws of Delaware in October 2011. However, Phoenix was unaware of this dissolution, as business with a company that referred to itself as CETCO continued. Instead of Technology Corporation, however, the company was Defendant Capital Equipment & Trading Corporation (hereinafter "Trading Corporation"), a Texas corporation with its headquarters in Houston, Texas, as well as Defendant Coralina Engineering, LLC (hereinafter "Coralina"), a limited liability corporation organized under the laws of Russia which also branded itself through its website, business cards, and communications with Phoenix as CETCO-Coralina.[1] Further, Chudnovets served as CEO and on the board of directors of Trading Corporation, and he is the sole member of Coralina. In July 2012, Phoenix and Trading Corporation entered into what Phoenix believed to be a "renewal" of the 2009 distribution agreement between the two parties, as Phoenix was not aware that Trading Corporation was a separate entity from Technology Corporation. The 2012 agreement was signed by Maria Roberson, the president of Trading Corporation. Throughout this time and until the events at the center of this litigation, business relations remained normal between Phoenix and the CETCO-branded companies, as Phoenix continued to receive purchase orders through Vadim Novak, a Coralina employee.

The 2009 and 2012 distribution agreements are nearly identical, and each contain two pertinent clauses. The "exclusivity clause" reads as follows:

> Neither Company [Phoenix] nor Distributor [CETCO] shall directly or indirectly enter into similar Agreements in the Territory for the design, development, manufacture, marketing, or sale of Equipment within the Territory and neither party will design,

---

[1] Further, there is another named defendant that allegedly uses the CETCO branding, Capital Equipment & Trading Company. However, Trading Corporation has indicated that this is not a separate entity but rather "the former official corporate name" of Trading Corporation. [DN 46-1, at 2 n. 2]. Phoenix has not contested this. Thus, the Court will treat all references to Capital Equipment & Trading Company as a reference to Trading Corporation.

> develop, manufacture, market, or sell Equipment in the Territory directly or indirectly competitive with the other party.

[DN 50-2, 50-7 at 2]. The "confidentiality clause" reads as follows:

> All price information and quotations regarding Equipment, customer lists, and customer names which now or hereafter are in Distributor's possession, and all engineering data and other technical data furnished by the Company to Distributor, will be deemed to have been furnished in confidence and for use by Distributor only in connection with this Agreement. All such data and information referenced above will remain the property of Company and, upon the expiration or termination of this Agreement, Distributor will dispose of all known copies of such information as directed by the Company.

[DN 50-2, 50-7 at 5–6].

At some point after entering into the 2012 distributor agreement, Phoenix was confronted with information that products very similar to its own were being sold in the distribution region assigned to Trading Corporation by Coralina and Defendant Electrogorsk Metal Factory, a Russian limited liability corporation doing business as Elemet.[2] Phoenix then filed this action in Jefferson Circuit Court, and the Defendants subsequently removed to this Court. Phoenix's amended complaint [DN 40] asserts five claims: breach of contract (Count I), unfair competition or "passing off" (Count II), violation of the Kentucky Uniform Trade Secrets Act (Count III), civil conspiracy (Count IV), and fraud or fraud in the inducement (Count V). Defendants Coralina and Chudnovets have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (4), (6), and the doctrine of forum non conveniens, and Defendant Trading Corporation has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] Elemet has yet to be served and has not made an appearance in this case.

3

## II. DISCUSSION

### A. PERSONAL JURISDICTION

Both Chudnovets and Coralina argue that the claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), as this Court lacks personal jurisdiction over them. Phoenix argues that this Court has personal jurisdiction pursuant to Kentucky's long-arm statute.[3] In determining whether personal jurisdiction exists over a defendant, a plaintiff "need only make a prima facie showing of jurisdiction" when the Court is determining the jurisdictional issue on written submission alone as it is doing here. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). "[T]he court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Id*. Furthermore, the court must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

#### 1. CHUDNOVETS

##### A. LONG-ARM STATUTE

Phoenix argues that this court has personal jurisdiction over Chudnovets pursuant to Kentucky's long-arm statute, KRS 454.210, as Chudnovets is a nonresident of Kentucky. This requires two separate showings by Phoenix, as the Court must both determine "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).

---

[3] Phoenix also argues that Chudnovets and Coralina are bound by forum selection clauses found in the 2009 and 2012 distribution agreements. Because the Court has personal jurisdiction pursuant to the long-arm statute, the Court need not discuss this argument.

4

As to the first requirement, the Kentucky Supreme Court has found that the statute requires a two-prong showing before a court can exercise personal jurisdiction over a nonresident. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the Court must find that a nonresident's conduct or activities fall within one of nine enumerated subsections in KRS 454.210. And second, the Court must determine if the plaintiff's claims arise from the defendant's actions. This requires a showing of "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" *Id.* at 59.

The Court finds that Chudnovets' activities in the state constitute "transacting any business in this Commonwealth," the first of the nine possibilities for jurisdiction under KRS 454.210. Phoenix alleges that Chudnovets came to Kentucky in April 2009 to attend a trade show for the coal industry. (Aff. Gary Drake [DN 50-3] ¶ 6.) During that trip, he, along with Vadim Novak, visited Phoenix's headquarters in Louisville where they gave a lengthy Powerpoint presentation about Technology Corporation and other CETCO-branded companies. (*Id.*) He also negotiated a renewal of the 2006 distribution agreement that was set to expire in a few weeks and proposed other possible joint ventures between Phoenix and Technology Corporation which did not come to fruition. (*Id.*) This negotiation and sales pitch qualifies as transacting business in the Commonwealth, as Chudnovets was soliciting current and future business for a company that, at the time, he was a ninety-percent owner, while being physically present in the state. *See Philmo, Inc. v. Checker Food Holding Co.*, 2016 WL 1092862, at *2–3 (W.D. Ky. Mar. 21, 2016) (compiling cases interpreting the phrase "transacting any business in the Commonwealth").

Further, the second requirement has also been met, as Phoenix's claims against Chudnovets arise from the business he transacted while in the Kentucky. Phoenix asserts that Chudnovets, acting as an agent of the CETCO-branded companies and Elemet, as well as on his own behalf, used the access to Phoenix's trade secrets that was granted as a result of the distribution agreement to misappropriate those trade secrets and sell "knock-off" products based on that confidential information, while making fraudulent statements in the process. (Pl.'s First Am. Compl. [DN 40] ¶¶ 32–51.) The CETCO-branded companies, Elemet, and Chudnovets would not have had access to those trade secrets from May 2009 to July 2012, a period in which Phoenix alleges the conspiracy to misappropriate began, if not for Chudnovet's activities in Kentucky negotiating the distribution agreement. Therefore, the claims arose from Chudnovet's activities in the state, and the requirements of the long-arm statute are met.

## B. DUE PROCESS REQUIREMENTS

After finding that Kentucky authorizes jurisdiction, the Court must determine whether the exercise of personal jurisdiction conforms with due process. "The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citations omitted). The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction[4] may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

---

[4] Phoenix has not argued that Chudnovets or Coralina are subject to general in personam jurisdiction in Kentucky.

> enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The Sixth Circuit considers purposeful availment, the first prong under the *Southern Machine* test, as "essential" to a finding of personal jurisdiction. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citation omitted). This requirement "serves to protect a defendant from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* (citations omitted). Finally, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [the agent] purposely availed [himself] of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus., Inc.* 204 F.3d 683, 698 (6th Cir. 2000) (citations omitted).

There are factors that weigh both in favor of finding Chudnovets purposefully availed himself to the benefit of conducting business in Kentucky and against it. Chudnovets has been physically present in the state at least three times. *See* Aff. Gary Drake [DN 50-3] ¶ 6; Def.'s Reply [DN 19] at 3; and Waugh Email [DN 50-19] at 2. Further, on all three trips he attended a coal trade show, with each likely involving at least some solicitation of business. He also personally negotiated the 2009 distributor agreement with Phoenix while present in the state at a time when he personally owned ninety percent of Technology Corporation, the company on whose behalf he was negotiating. He further engaged in discussions with Phoenix about an expanded partnership with the company, which never came to fruition, and he directed at least one email to a representative at Phoenix in Kentucky. [DN 50-11, at 2]. However, Chudnovets only visited Kentucky to solicit business on behalf of his companies, and his physical presence in

7

the state was sporadic, with only three visits coming in a six to seven year period and none coming in the past six years.

Weighing these factors, the Court finds that Chudnovets has purposefully availed himself to the protections of the state of Kentucky so as to establish personal jurisdiction over him. The Sixth Circuit's opinion in *Intera Corp.* is particularly informative. In that case, a Tennessee plaintiff was attempting to establish personal jurisdiction over out-of-state defendants who were corporate agents of a company accused of misappropriating trade secrets, as is the case here. The court found that the corporate agents were not subject to personal jurisdiction in Tennessee, but in doing so, it noted that the corporate agents "did not engage in any of the alleged deceptive actions within Tennessee . . . [and] have [never] transacted business in Tennessee in their personal or official capacities as corporate officers . . . " *Intera Corp.*, 428 F.3d at 616. Chudnovets meets both of those criteria, as his alleged fraudulent statements occurred while in Kentucky, and he has transacted business in Kentucky in his official capacity as a corporate officer. Chudnovets contacts with Kentucky are not "random" or "fortuitous," and while the attenuation factor is close, they are not so attenuated so as to upset "notions of fair play and substantial justice."

Further, the remaining due process requirements have been met as well. The Kentucky long-arm statute already requires a finding that the claims arise from the defendant's contacts with the state, just as the Due Process Clause does, and the Court has already established that Phoenix's claims arise from the business Chudnovets transacted while in Kentucky. And finally, "where, as here, the first two criterion are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (quoting *Theunissen*, 935 F.2d at 1461). Under

the third prong, courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Id*. at 554–55 (citation omitted). Here, while Chudnovets is a resident of Russia, the burden on him to defend himself is not so great so as to be unreasonable, as the evidence indicates he is still the CEO of a Texas corporation and speaks fluent English. The state of Kentucky has an interest in providing a forum for its residents to obtain relief from fraudulent actions taken against them, and Phoenix has an interest in obtaining such relief. And finally, while some of the actions at issue in this case took place in Russia, allowing a foreign forum to exercise jurisdiction would not lead to a more efficient outcome, as this Court has personal jurisdiction over Trading Corporation and will adjudicate that case regardless of any parallel action in a foreign jurisdiction. Therefore, the Court has personal jurisdiction over Chudnovets, and the motion to dismiss pursuant to Rule 12(b)(2) is **DENIED**.

## 2. CORALINA ENGINEERING, LLC

### A. LONG-ARM STATUTE

Coralina argues that it has no contacts with Kentucky and therefore cannot be subject to personal jurisdiction in the state. Much has been made in the parties' briefs about whether Coralina is an "alter-ego" of Trading Corporation and whether there should be a "piercing of the corporate veil" in this case so as to treat the two companies as one and the same. However, the Court need not make any determination on that issue at this point, as Coralina itself is subject to personal jurisdiction in this case regardless of its affiliations with Trading Corporation.

Just as with Chudnovets, Coralina has met the requirement of "transacting any business in this Commonwealth" under KRS 454.210. Chudnovets, the sole member of Coralina, stated

in his affidavit that Novak is an employee of Coralina and not Trading Corporation. (Aff. Alexander Chudnovets [DN 48-1] ¶ 28.) Further, Novak accompanied Chudnovets on his visit to Kentucky in 2009 to negotiate the distribution agreement between Technology Corporation and Phoenix and gave a lengthy Powerpoint presentation to Phoenix employees about the state of the two companies. [DN 50-15]. While Coralina was not a party to the distribution agreement, by Chudnovets' own admission, Coralina "facilitate[s] [Trading Corporation's] purchases and resales of products manufactured by Phoenix." (Aff. Alexander Chudnovets [DN 48-1] ¶ 24.) Further, Novak was in Kentucky in 2012 and brought a purchase order for equipment to Phoenix while in the state. [DN 50-5, at 2]. And Novak was in regular contact with Phoenix via email [DN 50-5], with his relationship being significant enough that he was the individual to whom Phoenix emailed the proposed 2012 distribution agreement between Phoenix and Trading Corporation, which Novak returned signed by Roberson. [DN 50-6]. Thus, by having an agent participate in negotiations for the distribution agreement between Technology Corporation and Phoenix, delivering purchase orders while in the state, and being heavily involved in the process that led to the 2012 distribution agreement between Trading Corporation and Phoenix, Coralina transacted business in Kentucky. *See Caesars Riverboat Casino*, 336 S.W.3d at 58 (outlining criteria that constitute "transacting business," including solicitation of business).

Additionally, Phoenix's claims against Coralina arise from Coralina's contacts with the state. As with Chudnovets, Phoenix claims that Coralina misappropriated trade secrets, which could not have occurred but for the distribution agreements that gave Coralina and the other defendants access to those trade secrets, and Coralina's agent played an active role in negotiating and delivering both the 2009 and 2012 agreements. Further, Phoenix's fraud claims allege that Coralina's agent, Novak, made fraudulent statements while in Kentucky in 2009. Therefore, the

claims against Coralina arise from its contacts with Kentucky, and the requirements of the long-arm statute have been met.

### B. DUE PROCESS REQUIREMENTS

Further, Coralina would suffer no due process violation by being subject to personal jurisdiction in Kentucky. Coralina has purposefully availed itself to the protections of the state of Kentucky so that exercising specific in personam personal jurisdiction is appropriate, as they have at least twice, in 2009 and 2012, sent an agent to Kentucky to negotiate contracts and deliver purchase orders, which both constitute the solicitation of business. Further, Coralina agents remained in regular contact with Phoenix in Kentucky via email, and those emails were directed at maintaining the business relationships between Phoenix, Trading Corporation, and Coralina. And even if Coralina was only acting on behalf of Trading Corporation, Coralina was not doing so without a financial interest. Just as with Chudnovets, these contacts were not "random" or "fortuitous," and they were even less attenuated than those of Chudnovets. Thus, the purposeful availment requirement has been met. *See Air Products and Controls*, 503 F.3d at 551 (noting that a "continuing business relationship" is a strong factor indicating purposeful availment).

Just as in the analysis under the Kentucky long-arm statute, Coralina's claims arise from its contacts with Kentucky; thus, it is reasonable to exercise personal jurisdiction. While Coralina is a Russian limited liability corporation, its sole member is already a party to this suit, diminishing any additional burden that may result from requiring a foreign defendant to defend itself in Kentucky. Kentucky has an interest in providing a forum for its citizens to obtain relief, and Phoenix has an interest in obtaining relief in its home state. And as the Court has previously stated, the claims against Trading Corporation will be adjudicated by this Court, meaning that

there would be no efficiency gained from having the claims against other defendants adjudicated in a different forum. Therefore, the Court has personal jurisdiction over Coralina, and the motion to dismiss pursuant to rule 12(b)(2) is **DENIED**.

### B. INSUFFICIENT PROCESS

#### 1. CHUDNOVETS

Chudnovets and Coralina also argue that the claims against them should be dismissed for insufficient process. As to Chudnovets, Phoenix attempted to serve process on him by sending process via certified mail to 2042 Brentwood Drive, Houston, Texas, the address on file for Chudnovets as CEO of Trading Corporation with the Texas Secretary of State. Chudnovets argues that this is not his residence; it is the former home of Roberson which he was last physically present at six years ago as a social guest. As a result of a mail forwarding directive, it was delivered to 2727 Kirby Drive, Houston, Texas, a high rise condominium building that Chudnovets has never been to. The certified mail was delivered and apparently signed for by a doorman at the building. Chudnovets argues that this service was insufficient, as it failed to comply with the requirements for service of a foreign resident under the Hague Service Convention, 20 U.S.T. 361, which preempt the methods of service permitted under the Federal Rules of Civil Procedure.

The Court rejects this preemption argument. The Hague Service Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361. However, the Supreme Court has stated that, "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Convention applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). As a result,

when the laws of the forum state allow for service within the United States, then service is valid and need not comply with the Convention, even if the individual being served is a foreign resident. In this case, Phoenix attempted to serve Chudnovets pursuant to the state laws of Texas, which is permitted under Fed. R. Civ. P. 4(e)(1), as that is the state in which service was attempted. Texas allows for service by certified mail at "the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found." Tex. R. Civ. P. 106(b). Because Chudnovets could "probably be found" at the company address listed with the Secretary of State, the Texas rules for service of process did not "requir[e] the transmittal of documents abroad," and the Hague Service Convention was not implicated at all. *See Schlunk*, 486 U.S. at 707–08 (finding that service of process did not require transmittal abroad and therefore the Hague Convention did not apply).

Chudnovets has not argued that Phoenix did not comply with the Texas rules for service of process, and the Court sees no evidence in the limited record before it that Phoenix failed to comply. Nor does he argue that the method of service denied him due process. Therefore, the Court finds that Chudnovets was properly served, and the motion to dismiss pursuant to Rule 12(b)(4) is **DENIED**.

### 2. CORALINA

Coralina also argues that Phoenix failed to comply with the Hague Service Convention in effecting service on it. Phoenix sent process to the Kentucky Secretary of State pursuant to KRS 454.210(3)(a), who then sent process to Coralina's principal offices in Moscow, Russia, via certified mail, return receipt requested. [DN 50-14]. However, this Court has previously held that, when service is made on the Kentucky Secretary of State who then sends process to the foreign defendant, "that service . . . requires the transmittal of documents abroad, and that [the

plaintiff] was therefore required to comply with the Hague Convention." *Norrenbrock Co. v. Ternium Mexico, S.A. De C.V.*, 2014 WL 556733, at *2 (W.D. Ky. Feb. 12, 2014). Further, although there is a split in authority on this issue, this Court has previously determined that "service of process by direct mail through the Kentucky Secretary of State to [a foreign Defendant] is not authorized by Article 10(a) of the Hague Convention." *Uppendahl v. American Honda Motor Co.*, 291 F. Supp. 2d 531 (W.D. Ky. 2003). *See also Humble v. Gill*, 2009 WL 151668, at *2 (W.D. Ky. Jan. 22, 2009) (compiling agreeing cases).

Thus, Phoenix was not permitted to serve Coralina via certified mail under Article 10(a) of the Hague Convention. Nor did Phoenix comply with any other method of service mentioned in the Convention. *See* 20 U.S.T. 361, art. 2–6 (establishing that service may be made through each state's "Central Authority" and detailing procedure for doing so). Therefore, service is quashed, and Phoenix has leave to effect service within 90 days upon Coralina Engineering, LLC. *See*, *e.g*, *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952) (if service of process is ineffective, the court should treat the motion to dismiss as one to quash the service of process and "the case should be retained" on the docket pending effective service).

### C. FORUM NON CONVENIENS

Chudnovets argues that the doctrine of forum non conveniens counsels in favor of dismissing Phoenix's claims against him. "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007). The defendant must show that there is "an adequate, available alternate forum in which the defendant is amendable to process." *Clark v. Bucyrus Int'l*, 634 F. Supp. 2d 814, 817–18 (E.D. Ky. 2009) (citing *Piper*

*Aircraft Co. v. Reyno,* 454 U.S. 235, 254-55 n. 22 (1981). In addition, the defendant must show that the private and public interests warrant dismissal in favor of the alternative forum. *See id.*

  As to the first factor, Chudnovets has shown he is amendable to service of process in the Russian Federation as a resident of Russia, making it an adequate alternative forum. Turning to the public factors, these include "court congestion, local interest in the matter, interest in having the trial at home with the law that governs, avoidance of conflict-of-law problems or application of foreign law, and unfairness in burdening local citizens with jury duty." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 832 (6th Cir. 2009) (citations omitted). Most of these factors are moot due to the forum selection clause between Phoenix and Trading Corporation, which requires this Court to adjudicate nearly identical claims against Trading Corporation as those that have been asserted against Chudnovets in his personal capacity. Thus, there would be no relief to the Court's schedule or a potential jury from refraining from hearing the claims against only one defendant. Alleged foreign misappropriation of a local company's trade secrets is a matter of local concern and interest, and the Court anticipates no issues from the potential application of foreign law that it would not also face in hearing the claims against Trading Corporation. Therefore, the public factors weigh against dismissal.

  As to the private factors, these include "the ease of access to evidence, ability to obtain witness attendance, and practical problems such as ease, expeditiousness, and expense." *Id.* at 833 (citations omitted). While certain witnesses and evidence are located in Russia, the fact that all of the defendants are so intertwined with one another should actually make the number of vital witnesses and amount of crucial evidence relatively small for the number of defendants in the case. Specifically to Chudnovets, he is the CEO of a Texas corporation with its headquarters in Houston, demonstrating that travel to the United States is not so great a burden that it would

justify dismissal of the case. And again, the Court must hear nearly identical claims against Trading Corporation, so keeping the case consolidated will promote efficiency. Therefore, the private factors also weigh against dismissal, and the motion to dismiss the claims against Chudnovets on the grounds of forum non conveniens is **DENIED**.

### D. FAILURE TO STATE A CLAIM

Next, Chudnovets and Trading Corporation[5] argue that Counts II – V of Phoenix's amended complaint should be dismissed, as the complaint fails to state a claim upon which relief may be granted. The Court will address each claim as it pertains to all defendants.

### 1. KENTUCKY UNIFORM TRADE SECRETS ACT

The Court begins with Count III, Phoenix's claim under the Kentucky Uniform Trade Secrets Act (hereinafter "KUTSA"). The defendants make two arguments: first, that Phoenix has failed to plead the trade secret with enough specificity so that it can be determined what was actually misappropriated; and second, that Phoenix has not adequately plead the statutory requirements of what constitutes a trade secret.

As to the first argument, a plaintiff must adequately plead what trade secrets were allegedly misappropriated, as "without the identification of trade secrets misappropriated, no KUTSA claim is stated." *Amtote Int'l, Inc. v. Kentucky Downs, LLC*, 2016 WL 1270262 (W.D. Ky. Mar. 31, 2016). However, "so long as [the plaintiff] can put forth general categories of its trade secrets and provide the type of factual allegations . . . that allow for the reasonable inference that [the defendants] improperly disclosed some of those trade secrets . . . [the plaintiff] has done all that is required to survive a motion to dismiss." *Luvata Electrofin, Inc. v. Metal Processing Int'l, L.P.*, 2012 WL 3961226 (W.D. Ky. Sep. 10, 2012).

---

[5] Coralina makes an identical motion to dismiss [DN 46-1], and if Coralina is ever properly served, the above analysis would be equally applicable to it.

The Court finds that Phoenix has plead what trade secrets were misappropriated with enough specificity to survive a motion to dismiss. While most of the complaint uses general terms such as "proprietary and confidential designs, information, and trade secrets," (Pl.'s First Am. Compl. [DN 40] ¶ 21), the complaint does specifically state that the defendants "utilize[d] Phoenix's confidential and proprietary designs and trade secrets to reverse engineer Phoenix belt presses . . ." (*Id.* ¶ 31.) This statement is specific enough to put forth a "general category" of trade secrets, namely the confidential design of the belt press, so that the defendants are reasonably on notice as to what they have allegedly misappropriated.

Turning to the defendants' second argument, a claim made under KUTSA is sufficiently plead if the plaintiff shows "that the information (1) has independent economic value, (2) is not readily ascertainable by proper means, and (3) was the subject of reasonable efforts to maintain its secrecy." *BDT Products, Inc. v. LexMark Int'l, Inc.*, 274 F. Supp. 2d 880, 890 (E.D. Ky. 2003) (citations omitted). Phoenix has adequately plead the first and third requirements, as the complaint repeatedly makes references to lost sales suffered as a result of the alleged misappropriation and the confidentiality clause that was placed into every distribution agreement with the CETCO companies. (*See* Pl.'s Am. Compl. [DN 40] ¶¶ 17, 31.) The defendants argue, however, that Phoenix has not plead any facts demonstrating that the misappropriated trade secrets were not readily ascertainable by proper means.

Phoenix has plead that the defendants have "utilize[d] Phoenix's confidential and proprietary designs and trade secrets to reverse engineer Phoenix belt presses." The defendants argue that, because it is sufficient to plead that a trade secret cannot be reversed engineered to demonstrate that the trade secrets are not readily ascertainable by proper means, *see Luvata*, 2012 WL 3961226, at *8, Phoenix's admission that its belt presses were reverse engineered

defeats its status as a trade secret. But Phoenix has not argued that its belt press is the trade secret; instead, it has plead that the confidential design of the belt press, provided to the defendants pursuant to the confidentiality clause of the distribution agreement, is the trade secret, and that reverse engineering of the belt press would not be possible without that trade secret. (*See* Pl.'s Am. Compl. [DN 40] ¶¶ 21, 23, 31.) Using confidential designs that were provided pursuant to a confidentiality clause to reverse engineer a machine and sell it would not be considered "proper means" by which those designs could be ascertained. Thus, sufficient facts have been plead indicating that the trade secret is not readily ascertainable by proper means, and the amended complaint "plausibly states that a trade secret exists in this case," *Amtote*, 2016 WL 1270262, at *6 (citing *Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 29 (6th Cir. 2011)). Admittedly, this is a fine line between the confidential design of the belt press and the belt press itself, and discovery may reveal that the design of the belt press was ascertainable without misappropriation of any trade secret. However, such a dispute is best dealt with at the summary judgment stage, and not earlier. Therefore, the motions to dismiss Count III are **DENIED**.

### 2. UNFAIR COMPETITION AND "PASSING OFF"

Count II of the amended complaint alleges that the defendants conspired to reverse engineer Phoenix's machines and equipment by misappropriating Phoenix's confidential trade secrets and information, and then pass off such equipment as a true product. The defendants argue that this claim is preempted by KUTSA. KUTSA "replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," with certain exceptions. KRS 365.892(1). *See also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 788–89 (W.D. Ky. 2001) (discussing KUTSA's preemptive effect). The Court finds that this tort claim is based upon the misappropriation of a trade secret, the exact type

of claim KUTSA was intended to preempt. Therefore, Count II is preempted, and the motions to dismiss Count II are **GRANTED**.

### 3. FRAUD AND FRAUD IN THE INDUCEMENT

Count V of the amended complaint claims that the defendants made fraudulent statements that Phoenix detrimentally relied upon. Specifically, though, Phoenix pleads that the defendants failed to disclose three material facts: that (1) "CETCO and Coralina are 'alter ego' companies which share the same owners, management and employees," (2) that "Coralina directly markets and sells Elemet's products in CETCO's exclusive territory," and (3) that "CETCO and Coralina have assisted Elemet and participated in the conspiracy to reverse engineer and manufacture 'knock-off' Phoenix products and then market and sell the same in CETCO's exclusive sales territory." (Pl.'s First Am. Compl. [DN 40] ¶ 50.)

The defendants argue that the amended complaint fails to meet the pleading requirements for claims of fraud under Fed. R. Civ. P. 9(b).[6] To plead a claim of fraud with particularity as is required under Rule 9(b), a plaintiff must (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) plead when and where the statements were made, and (4) explain what made the statements fraudulent. *Republic Bank & Trust Co. v. Bear Stearns Co.*, 683 F.3d 239, 247 (6th Cir. 2012). However, when the claim is one of fraud by omission, fraud only occurs when the omission is coupled with a duty to disclose such information. *See Giddings Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Therefore, a plaintiff must specify that the defendant had a duty to disclose that information.

Phoenix has not plead any facts demonstrating that any defendant had a duty to disclose any of the specific omitted statements included in Phoenix's amended complaint. The complaint

---

[6] The defendants also argue that these fraud claims are preempted under KUTSA, but because the claims have been deficiently plead, the Court will not address this argument.

contains no allegations that any of the defendants were required to disclose the omitted statements, such as through the distribution agreements or an existing fiduciary duty. Therefore, the claim has not been sufficiently plead under Rule 9(b), and the motions to dismiss Count V are **GRANTED.**

### 4. CIVIL CONSPIRACY

Count IV of the amended complaint alleges that the defendants were in a civil conspiracy to misappropriate Phoenix's confidential trade secrets for their own financial benefit. In Kentucky, a claim of civil conspiracy is derivative of other causes of action, requiring the plaintiff to show "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co. LLC*. 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citations omitted). Here, because Phoenix's KUTSA claim has not been dismissed against any defendant, there is a common claim from which the civil conspiracy claim derives. Therefore, the motions to dismiss Count IV are **DENIED.**

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions to dismiss [DN 46, 47] are **GRANTED IN PART** and **DENIED IN PART**. The motions to dismiss as to Counts III and IV are **DENIED**. The motions to dismiss as to Counts II and V are **GRANTED**. Further, service upon Coralina Engineering, LLC, is **QUASHED**. Phoenix has leave to effect service within 90 days upon Coralina Engineering, LLC.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 12, 2017

cc: Counsel of Record