# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-CV-00024-JHM

PHOENIX PROCESS EQUIPMENT CO.                             PLAINTIFF

V.

CAPITAL EQUIPMENT & TRADING                            DEFENDANTS
CORPORATION, et al

### MEMORANDUM OPINION & ORDER

This matter is before the Court on a motion to reconsider portions of the Court's January 13, 2017 memorandum opinion and order by Defendants Capital Equipment & Trading Corporation, Coralina Engineering, LLC, and Alexander Chudnovets (DN 60), as well as a motion for authorization of substituted service by Plaintiff Phoenix Process Equipment Co. (DN 66.) Fully briefed, these matters are ripe for decision.

### I. BACKGROUND

Previously, Coralina and Chudnovets filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (5), (6), and the doctrine of forum non conveniens, and Trading Corporation filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Court's memorandum opinion and order on January 13, 2017, granted the motions to dismiss Counts II and V and denied the motions to dismiss Counts III and IV. The Court also denied Coralina and Chudnovets' motion to dismiss for lack of personal jurisdiction and forum non conveniens as it pertained to both defendants. Finally, the Court denied the motion to dismiss for insufficient service as to Chudnovets, but it granted the motion as to Coralina and quashed service upon it. Trading Corporation, Coralina, and Chudnovets now move for reconsideration of the Court's decisions regarding personal jurisdiction over Coralina and Chudnovets, service of process on Chudnovets,

and the civil conspiracy claim. Phoenix also now moves for authorization to serve Coralina via its Kentucky-based attorney.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 59(e) permits a court to "alter or amend" its prior judgment for one of four reasons: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Schlaud v. Snyder*, 785 F.3d 1119, 1124 (6th Cir. 2015) (citations omitted). However, Rule 59(e) is a limited rule, whose purpose is "to allow the [Court] to correct its own errors" that are timely presented. *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citations omitted). It is not an opportunity for the losing party to simply offer old arguments a second time or "to offer additional arguments in support of its position" that were not properly presented initially. *Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007).

## III. MOTION FOR RECONSIDERATION

### A. SERVICE OF PROCESS

Chudnovets first asks this Court to reconsider its previous decision that Phoenix sufficiently served process upon him. Phoenix served Chudnovets by sending process via certified mail to 2042 Brentwood Drive, Houston, Texas, the address on file for Chudnovets as CEO of Trading Corporation with the Texas Secretary of State. As a result of a mail forwarding directive, it was delivered to 2727 Kirby Drive, Houston, Texas, a high rise condominium building that Chudnovets has never been to. The certified mail was delivered and apparently signed for by a doorman at the building. The Court previously held that Chudnovets was sufficiently served, as the Hague Service Convention, 20 U.S.T. 361, was not implicated due to service being effected within the United States, and that service of process otherwise complied

with the Texas Rules of Civil Procedure. (DN 57, at 12–13.) Chudnovets argues that this service was insufficient, as it failed to comply with the requirements for service of a foreign resident under the Hague Convention, which preempts other methods of service permitted under the Federal Rules of Civil Procedure. He also argues that even if the Hague Convention was not implicated, service was insufficient under the Texas Rule of Civil Procedure.

The Hague Service Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361. However, the Supreme Court has stated that, "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). As a result, when the laws of the forum state allow for service to be effected within the United States, then service need not comply with the Convention, even if the individual being served is a foreign resident.

The Court previously found that Rule 4(e)(1) permitted Phoenix to serve Chudnovets according to the Texas Rules of Civil Procedure, as that was the state in which service would be effected. Because the Texas rules did not require service to be transmitted abroad, the Hague Convention was not implicated. Chudnovets argues that Rule 4(e) is inapplicable, since Chudnovets is a resident of a foreign country; instead, service must be effected under Rule 4(f), which would require compliance with the Hague Convention. Based on this argument, the Court must determine whether service under Fed. R. Civ. P. 4(e) is permissible when the party being served is a foreign individual. At first glance, the answer would appear to be no, as Rule 4(e) is titled "Serving an Individual Within a Judicial District of the United States." Likewise, Rule 4(f) is titled "Serving an Individual in a Foreign County." The most grammatical reading of those

titles implies that each rule will provide the method for serving an individual when that individual is located either in a judicial district of the United States (4(e)) or abroad (4(f)). However, the actual text of the rules implies otherwise. Rule 4(e) reads, in pertinent part,

> Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by[] following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

(subdivisions omitted). Rule 4(f) likewise reads, in pertinent part,

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States[] by any internationally agreed means of service that is reasonable calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]

(subdivisions omitted).

These rules make no mention of the location of the individual upon whom service is being effected. Instead, all references to location are to the location of where service is being effected. This reading of the rules harmonizes with well-accepted methods of service, such as serving an appointed agent, that are acknowledged by the federal rules and the rules of many states. *E.g.*, Fed. R. Civ. P. 4(e)(2)(C); Ky. R. Civ. P. 4.04. An individual who is actually located abroad is certainly permitted, and sometimes required, to appoint an agent located within the United States to receive service on their behalf, and the fact that individual is located abroad does not mean that Rule 4(f) must instead be invoked. *See also Calista Enter. Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371, 1376 n. 2 (D. Or. 2014) ("[I]f service is properly effected under Rule 4(e)(2)(B) by delivery at the person's dwelling located within a judicial district of the United States, the Convention is not triggered simply because the person being served may, at the time of service, be vacationing in the Czech Republic"). The text of the rules reference the

location of the service being effected, not the location of the individual to be served. Therefore, so long as the Texas Rules of Civil Procedure permitted service upon an individual abroad to be effected within the United States, then service of process fell wholly within Rule 4(e), and the Hague Convention is not implicated at all. *Accord Charles v. Sanchez*, 2013 WL 12087219, at *3 (W.D. Tex. Aug 5, 2013) ("Rule 4(e)(1) . . . allows a plaintiff to serve a foreign individual *within* a judicial district of the United States pursuant to the law of the state in which the district court is located [or service is effected] . . . the Hague Convention is not initially applicable because service was not effected *in* [the foreign country]") (emphasis in original).

The Court previously found that Texas allows for service by certified mail at "the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found." Tex. R. Civ. P. 106(b). Because Chudnovets could "probably be found" at the company address listed with the Secretary of State, the Court found that the Texas rules for service of process did not "requir[e] the transmittal of documents abroad," and the Hague Convention was not implicated at all. Chudnovets now argues that the Texas Rules of Civil Procedure do not allow service by direct mail for individuals located abroad. He further argues that even if service by direct mail is permissible, Phoenix did not comply with the Texas Rules of Civil Procedure for doing so.

The question is whether these are new arguments presented by Chudnovets such that a motion to reconsider is not the appropriate place "to offer additional arguments in support of its position" that were not properly presented initially. *Elec. Ins. Co.*, 487 F. Supp. 2d at 902. The Court noted in its January 13, 2017 opinion that "Chudnovets has not argued that Phoenix did not comply with the Texas rules for service of process, and the Court sees no evidence in the limited record before it that Phoenix failed to comply." (DN 57, at 13.). Chudnovets' argument

5

was, and still is, largely directed at how service was deficient under the Hague Convention, not its deficiency under the Texas Rules of Civil Procedure. However, it is not correct to say Chudnovets never presented the argument. He just failed to present it in a manner which caught the Court's attention. Regardless, it is an appropriate matter for reconsideration. And upon doing so, the Court finds the attempted service upon Chudnovets does not comport with the Texas rules. Rule 107(c) provides that the return receipt must contain the addressee's signature. It is uncontested that the return receipt does not contain Chudnovets' signature. Nor is there any evidence that the court, upon motion and affidavit, authorized alternative service as contemplated by Rule 106(b) of the Texas Rules of Civil Procedure. Therefore, Chudnovets' motion for reconsideration on this issue is **GRANTED.**[1]

### B. PERSONAL JURISDICTION

Next, both Chudnovets and Coralina seek reconsideration of this Court's determination that they are subject to personal jurisdiction in Kentucky. They first argue that the record does not support the Court's determination that both are subject to this Court's personal jurisdiction, as there is not sufficient evidence that either "transacted business" under the Kentucky long-arm statute or that exercising jurisdiction over them would comport with due process. They point to facts in their own affidavits that contradict the facts proffered by Phoenix to establish personal jurisdiction. But the Sixth Circuit has made clear how the Court should treat contradictory facts proffered by a defendant when deciding the issue of personal jurisdiction:

> [T]he party seeking assertion of *in personam jurisdiction*[] bears the burden of showing that such jurisdiction exists. When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without

---

[1] Having found that service was deficient under the Texas Rules of Civil Procedure, the Plaintiff will undoubtedly seek the Court's approval in the form of a proper motion for substituted service upon Chudnovets under Fed. R. Civ. P. 4(f)(3) in the same manner as it does for service upon Coralina. *See* supra, section IV.

> conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.
>
> Furthermore, a court disposing of a 12(b)(2) motion **does not weigh** the controverting assertions of the party seeking dismissal . . . because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts. Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 1996) (citations and quotations omitted) (emphasis in original). The Court decided the motion to dismiss for a lack of personal jurisdiction without conducting an evidentiary hearing, as neither party asked the Court to conduct one. Because no hearing was held, the Court examined the evidence in a light most favorable to Phoenix and found that it had made a prima facie showing of personal jurisdiction over both Chudnovets and Coralina. It did not weigh Phoenix's evidence against contradictory evidence proffered by the defendants, as the Sixth Circuit has instructed against that practice.

The Court previously found that Chudnovets and Coralina transacted business in Kentucky, satisfying the long-arm statute. Phoenix's evidence indicated that Chudnovets and Vadim Novak, acting on behalf of Coralina, visited Phoenix's headquarters in Louisville where they gave a lengthy Powerpoint presentation about Technology Corporation, negotiated a renewal of the 2006 distribution agreement that was set to expire in a few weeks, and proposed other possible joint ventures between Phoenix and Technology Corporation which did not come to fruition. The Court held that this constituted transacting business in the Commonwealth, and after reviewing the motion for reconsideration, the Court does not find its original conclusion to have been premised upon a clear error of law.

7

Chudnovets and Coralina also argue that the claims asserted against them did not arise from their contacts with Kentucky. They take issue with the Court's reliance on the alleged fraudulent statements made by Chudnovets and Novak while both were in Kentucky to find a nexus between the claims asserted and their actions in Kentucky, since the Court later in its January 13, 2017 opinion dismissed the fraud claims for being insufficiently plead. But in making this argument, Chudnovets and Coralina seek to put the cart before the horse. As stated previously, when deciding whether personal jurisdiction exists, the Court must "consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe*, 89 F.3d at 1262. *See also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When one takes a pleading in the light most favorable to the plaintiff, it assumes that it contains viable claims that will be supported with proof of all the required elements. The Court was required to assume that Phoenix had viable claims for fraud when deciding the issue of personal jurisdiction, even if the Court later determined that those claims should be dismissed without prejudice for a being insufficiently plead. Chudnovets and Coralina ask this Court to look backwards and revisit its personal jurisdiction analysis *after* it has analyzed Phoenix's claims under Rule 12(b)(6), something the Court cannot do. As the Supreme Court stated in *Bell v. Hood*, 327 U.S. 678 (1946), jurisdiction

> is not defeated . . . by the possibility that the averments [in the pleadings] might fail to state a cause of action on which [the plaintiff] could actually recover . . . Whether the complaint states a cause of action on which relief could be granted . . . must be decided after and not before the court has assumed jurisdiction over the controversy.

*Bell*, 327 U.S. at 682. Thus, the Court was required to consider the claims for fraud when deciding the issue of personal jurisdiction, even if those claims were later dismissed pursuant to Rule 12(b)(6).

Finally, Chudnovets and Coralina attack this Court's finding that the exercise of personal jurisdiction comported with the requirements of due process by emphasizing the events that took place in Russia, rather than Kentucky. The Court admitted in its previous opinion that the purposeful availment prong of the due process analysis was a close call, as some of the contacts with Kentucky raised questions as to whether they were too attenuated to establish purposeful availment. But Chudnovets and Coralina have offered the same facts as they originally did in their motion to dismiss, which the Court previously found were sufficient to establish purposeful availment. Particularly, the defendants do not question this Court's reliance on *Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005), which the Court found to be significantly on point. The Court sees no clear error of law in its finding that personal jurisdiction exists over the defendants. Therefore, the motion for reconsideration as to whether Chudnovets and Coralina are subject to this Court's personal jurisdiction is **DENIED**.

Chudnovets and Coralina also make two requests related to their motion for reconsideration of the Court's decision regarding personal jurisdiction. First, they ask that this Court allow limited discovery and an evidentiary hearing regarding personal jurisdiction. No party asked for discovery or an evidentiary hearing when this Court decided the motion to dismiss, and now is not a proper time to make such a request. The issue has been decided, and it was done so under the appropriate standard for when personal jurisdiction is decided on the pleadings and affidavits alone. The defendants knew that Phoenix only needed to establish a prima facie case of personal jurisdiction if no evidentiary hearing was requested, as they stated so in their motion to dismiss. (DN 47-1, at 15.) They cannot now seek to raise the evidentiary bar by requesting a hearing after having lost under a lower standard. Therefore, the motion for limited discovery and an evidentiary hearing is **DENIED**.

Second, Chudnovets and Coralina request that this Court certify its ruling on personal jurisdiction for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That statute states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . .

The Sixth Circuit has stated that § 1292(b) "confer[s] on district courts first line discretion to allow interlocutory appeals." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 917 (S.D. Ohio 2013) (citing *Turi v. Main Street Adoption Servs., LLP*, 633 F.3d 496, 504 (6th Cir. 2011)). But this statute should only be used sparingly and in exceptional cases, *DRFP*, 945 F. Supp. 2d at 918, since, as "[a]ttractive as it may be to refer difficult matters to a higher court for advance decision, such a course of action is contrary to our system of jurisprudence." *United States ex rel. Elliot v. Brickman Group Ltd., LLC*, 845 F. Supp. 2d 858, 863 (S.D. Ohio 2012) (citations omitted).

The Court first must look to whether the appeal would involve a controlling question of law for which there is a substantial ground for difference of opinion. "A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). But "[p]erhaps most significantly . . . § 1292(b) is not appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." *Elliot*, 845 F. Supp. 2d at 864 (quotations omitted). Finally,

> a substantial ground for difference of opinion exists only when 1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not

> substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question.

*United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, 2009 WL 485501, at *1 (S.D. Ohio Feb. 26, 2009) (quotations omitted).

The issue of personal jurisdiction is a controlling question of law, since all claims against Chudnovets and Coralina must be dismissed if no jurisdiction exists over them. But the motion for reconsideration does not present purely legal arguments as to why the Court's original opinion was incorrect. The argument made by Chudnovets and Coralina is reliant on factual disputes, insisting that the Court gave improper weight to Phoenix's evidence while not crediting their own. They do not point to a pure legal issue that requires guidance from an appellate court, other than framing the exact factual situation of this case as an important and unresolved question of whether personal jurisdiction exists in such a situation. The Court does not find that this issue, specifically whether Kentucky may exercise personal jurisdiction over foreign defendants who have physically been in the state to conduct business related to the claims asserted, as meeting any of the requirements for being an issue for which a substantial ground for difference of opinion exists. Chudnovets and Coralina point to no circuit split or difference of opinion within the Sixth Circuit, nor do they argue that this is an issue of first impression. And while the question may be difficult and require serious consideration of the record and case law, all questions of personal jurisdiction require serious scrutiny of the facts and intensive analysis of prior analogous cases, except for the most clear-cut issues which usually do not generate a motion to dismiss. Therefore, the Court finds that this case does not present a controlling question of law for which a substantial ground for difference of opinion exists, and the motion for certification for an interlocutory appeal is **DENIED**.

## C. CIVIL CONSPIRACY

Lastly, Chudnovets and Coralina ask this Court to reconsider its decision denying the motion to dismiss the claim for civil conspiracy. They argue that any claim for civil conspiracy is preempted, since the only claim from which a civil conspiracy could derive is the claim under the Kentucky Uniform Trade Secrets Act ("KUTSA"), and KUTSA preempts all other remedies for trade secret misappropriation.

In Kentucky, a claim of civil conspiracy is derivative of other causes of action, requiring the plaintiff to show "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citations omitted). In its January 17, 2017 opinion, the Court held that Phoenix's claim for civil conspiracy survived the 12(b)(6) motion to dismiss, as the KUTSA claim remained from which the civil conspiracy claim could derive. Chudnovets and Coralina did make the argument in their motion to dismiss that no civil conspiracy could derive from the KUTSA claim, as KUTSA preempts all other remedies for trade secret misappropriation. (DN 47-1, at 40.) Their motion for reconsideration of this issue is well taken, and the Court agrees that KUTSA preempts a claim for civil conspiracy deriving from the KUTSA claim.

KUTSA "replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," with certain exceptions. KRS 365.892(1). *See also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 788–89 (W.D. Ky. 2001) (discussing KUTSA's preemptive effect). This includes claims for civil conspiracy deriving from a KUTSA claim. *Grief, Inc. v. MacDonald*, 2007 WL 679040, at *3 (W.D. Ky. Mar. 1, 2007). With only the KUTSA claim remaining as to all defendants, the civil conspiracy

claim has no other common claim from which it could derive. Therefore, the motion for reconsideration as to the civil conspiracy claim is **GRANTED**, and Count IV of the First Amended Complaint is **DISMISSED** without prejudice.

### IV. MOTION FOR AUTHORIZATION FOR SUBSTITUTED SERVICE

The Court now turns to Phoenix's motion for authorization to serve Coralina via Coralina's Kentucky-based attorney, pursuant to Fed. R. Civ. P. 4(f)(3). In this Court's January 13, 2017 opinion, it quashed service on Coralina, as Phoenix's attempt to have the Kentucky Secretary of State send service via certified mail to Coralina's principal offices in Moscow, Russia, did not comport with the requirements of the Hague Convention. (DN 57, at 13–14.) Phoenix now argues that the Court should authorize substitute service on Coralina's attorney, as any attempt to serve Coralina pursuant to the Hague Convention would be futile. Coralina objects to any authorization of substitute service.

Under the Hague Convention, the primary method of effecting service upon a foreign defendant is to send all necessary process to the signatory nation's Central Authority, which will then deliver the process to the parties by appropriate methods. 20 U.S.T. 361, art. 2–6. However, Phoenix has indicated that the Russian Federation has "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters," and "requests sent directly by litigants to the Russian Central Authority under the Hague Convention are returned unexecuted." U.S. Department of State, Bureau of Consular Affairs, Legal Considerations, International Judicial Assistance: Russian Federation (Nov. 15, 2013), available at https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/russia-federation.html. *See also SEC v. Dubovy*, 2016 WL 7217607 (D.N.J. Dec. 13, 2016) (indicating that Russia's failure to serve documents sent to its Central Authority is ongoing). Phoenix has asked

the Court to authorize an alternative means of service, instead of requiring it to engage in what it believes would be an exercise in futility by sending process to Russia's Central Authority to be served on Coralina.

Coralina, as a limited liability company, must be served according to Fed. R. Civ. P. 4(h). When that service would occur outside the United States, Rule 4(h)(2) permits service by any method permitted under Rule 4(f), with one exception that is not relevant to the facts of this case. Rule 4(f)(1) permits service in accordance with any internationally agreed means of service, making specific reference to the Hague Convention. Rule 4(f)(2) provides methods of service permitted for when there is no international agreement or the agreement does not specify the means by which service is to be effected. Finally, Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders."

The first issue the Court must address is whether Rule 4(f) permits the Court to authorize substitute service under Rule 4(f)(3) when there has been no attempt to comply with the Hague Convention under Rule 4(f)(1). Phoenix has not sent process to Russia's Central Authority, and Coralina argues that it would be premature for this Court to permit substitute service without Phoenix having attempted service via that method. The Sixth Circuit "has not addressed the issue of whether there is a hierarchy or preference for the method of service under Rule 4(f)." *Flava Works, Inc. v. Does 1–26*, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). However, the Ninth and Federal Circuits have rejected the argument that Rule 4(f) mandates that service be attempted under subsections (1) or (2) before the Court can authorize substitute service under Rule 4(f)(3), finding that "[n]o such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). *See also Nuance Comm., Inc. v. Abbyy Software*

14

*House*, 626 F.3d 1222 (Fed. Cir. 2010). "By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or 4(f)(2)." *Rio Properties*, 284 F.3d at 1015. Further, Rule 4(h), a necessary component to this analysis as Coralina is a corporation that must be served pursuant to that rule, requires international service "in any manner prescribed by Rule 4(f)," only excluding Rule 4(f)(2)(C)(1) as an option; there is no mention of hierarchy or order in which service must be attempted. Based on these arguments, "[t]he court therefore adopts the reasoning of the Ninth Circuit in *Rio Properties*, and holds that it is not necessary for plaintiff to attempt service by the Hague Convention prior to seeking permission for alternative service." *Flava Works*, 2013 WL 1751468, at *7.

However, even if Rule 4(f) does not establish a preferred method of service among its options, many courts do require, as a factor in weighing whether to exercise its discretion and allow substituted service, a showing "that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service." *United States v. Alphatec Spine, Inc.*, 2016 WL 1182260, at *2 (S.D. Ohio Mar. 28, 2016) (citations omitted). The Court, though, is satisfied with Phoenix's efforts. Phoenix has established that Russia's Central Authority would not deliver any process sent to it. Coralina argues that Phoenix's reliance on the State Department website is not sufficient to establish that process would actually not be delivered, and it points to a statement on the website that the State Department is not taking a position in any pending litigation by stating that Russia does not deliver process sent to its Central Authority. But the Court is satisfied that the information on the website reflects the reality of the situation. First, the State Department website does not stand on its own; a plethora of cases since Russia began refusing to serve process through its Central Authority indicate the same, many of which the parties cited to in their briefs. *E.g.*

15

*Nuance*, 626 F.3d 1222; *Arista Records LLC v. Media Services LLC*, 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008). And the Court is not using the State Department's information on its website to establish the State Department's position in this litigation, but rather using the information provided by the State Department to evaluate Phoenix and Coralina's positions. Therefore, Phoenix has sufficiently established that an attempt at service through the Central Authority would be futile. The Court will not require an attempt to serve Coralina by that method, as Phoenix's efforts so far have been reasonable; when futility is almost certain to result, exercising no effort towards that end and seeking a different path is often the most reasonable course of action.

The next issue Phoenix's request presents, though, is whether the Hague Convention or Rule 4(f) allows this specific form of substituted service: service on a party's attorney in the United States. Rule 4(f)(3) specifically requires that the substituted service not violate an international agreement like the Hague Convention. The Hague Convention does provide for other methods of service than sending process to the nation's Central Authority. 20 U.S.T. 361, art. 10. However, Russia has objected to all other forms of service, as it is permitted to do so. Declaration of the Russian Federation, art. 6, available at https://www.hcch.net/en/instruments/conventions/statustable/notifications/?csid=418&disp=resn; *Nuance*, 626 F.3d at 1237. As a result, the only method of service permitted by the Hague Convention on a Russian company is to send process to the Central Authority, which the Court has already determined would be futile. But numerous courts have found that service on the attorney of a foreign individual or company, when done within the United States, does not implicate the Hague Convention, as it is no longer "an occasion to transmit a judicial or extrajudicial document for service abroad," according to the Supreme Court's interpretation of that phrase in *Schlunk*. *See*

*Calista Enterprises*, 40 F. Supp. 3d at 1376 ("Of Tenza's proposed methods of service, substituted service upon Mr. Zhukov's domestic attorneys is the least problematic. Such service would be complete within the United States and would therefore not trigger the Hague Service Convention"); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) ("Since service is being requested on defense counsel, whose office is located in Richmond, Virginia, the Hague Convention does not apply"). The Court agrees with Phoenix and the above cited cases that service on an attorney located in the United States would not implicate the Hague Convention; thus, such a method of service does not run afoul of the Convention.

Further, Rule 4(f) is not an impediment. While the method of service the Court authorizes under Rule 4(f)(3) must not be prohibited by international agreement, the Advisory Committee Notes to the 1993 Amendment to Rule 4(f) envision the use of Rule 4(f)(3) in this situation. "Rule 4(f)(3) is most likely to be employed when a foreign country's Central Authority fails to effect service within the six-month period provided by the Hague Convention or refuses to serve a complaint based on its own public policy or substantive law limitations." *C & F Systems, LLC v. Limpimax, S.A.*, 2010 WL 65200, at *2 (W.D. Mich. Jan 6, 2010) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1133 at 313 (3d ed. 2002)). This describes the current situation, as Russia has adopted the policy of not cooperating with the United States on civil and commercial judicial matters. Because Russia's Central Authority refuses to serve process sent to it by United States litigants, substituted service is permitted by Rule 4(f), and service upon an attorney in the United States is a widely accepted method under Rule 4(f)(3). *See Calista Enterprises*, 40 F. Supp. 3d at 1376; *FMAC*, 228 F.R.D. at 534; *Harper v. W.W. Grainger, Inc.* 2013 WL 2470751, at *4 (W.D. Ky. 2013).

Finally, service upon Coralina via its American attorney is constitutional, as it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Nuance*, 626 F.3d at 1240 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Coralina has retained counsel in relation to this case, and based upon the filings of the parties, it appears to be in regular contact with counsel so that they would be apprised of the suit and given a chance to respond if service was effected through its counsel.

Coralina raises numerous objections to this method of substituted service. It argues that, if substituted service is to be used, Phoenix must follow the advice listed on the State Department website that litigants "may wish to seek guidance from legal counsel in the Russian Federation regarding alternative methods of service." Other courts have noted that, if the method of service does not comply with Russian law, it "may very well affect the plaintiff's ability ultimately to enforce any judgment in Russia." *Forum Financial Group, LLC v. Pres. and Fellows of Harvard Coll.*, 199 F.R.D. 22, 25 (D. Me. 2001). But the Court's only task is to evaluate whether the proposed method of substituted service runs afoul of Rule 4(f)(3) or the Hague Convention, not whether service would be acceptable in another forum. Therefore, while the State Department's advice may in fact be good advice to a litigant, failure to follow the advice does not violate the Hague Convention or Rule 4(f)(3).

Coralina also objects on the grounds that its attorney has not been made an agent, through either express or implied authority, to receive service. The Court agrees that Coralina's attorney is not its voluntary agent, but numerous other courts have made attorneys involuntary agents for the sole purpose of receiving service, and the Court will do the same here. *E.g. Calista Enterprises*, 40 F. Supp. 3d at 1376 (collecting cases of involuntary agency under Rule 4(f)(3)).

Further, Coralina argues that it is in effect being punished for retaining counsel and making an appearance in the case to contest jurisdiction and service, as substituted service on its attorney would not be possible if it had ignored the earlier deficient service and not retained counsel. The Court understands Coralina's position, but the present motion requires the Court to look to whether the proposed substituted service complies with three areas of law: the Hague Convention, Rule 4(f), and due process. Seeing no violation of any of those, the Court will allow the substituted service.

Next, Coralina argues that Phoenix and the cases it relies on improperly equate actual knowledge of a lawsuit to proper service. But this mischaracterizes the importance of actual knowledge. Coralina is not considered served because it knows of the pending litigation. Knowledge is a factor in ensuring that the method of service comports with due process. But Coralina will not be served until Phoenix has either complied with a permitted method of service under Rule 4(f) or one the Court permits, and the Court will only allow a method of service if it is reasonably calculated to give Coralina knowledge of the suit. And finally, Coralina argues that allowing substituted service raises separation of powers issues, as the Court is permitting Phoenix to avoid compliance with a treaty negotiated and ratified by other branches of the federal government. But the Court is merely interpreting the treaty, just as the Supreme Court did in *Schlunk* and what the Court must do with other federal laws in almost every case it hears. Therefore, the Court rejects this argument.

Because the proposed method of substituted service comports with the requirements of the Hague Service Convention, the Federal Rules of Civil Procedure, and due process, the motion for substituted service is **GRANTED**. Phoenix is permitted to serve Coralina's Kentucky-based attorney, Byron E. Leet at Wyatt, Tarrant & Combs, LLP, by serving him at his

business address and email address on file with this Court. The Court previously ordered that service be effected within 90 days of January 13, 2017. However, that time has now passed. Therefore, Phoenix shall have **30 days** from the entry of this order to serve process upon Coralina via its Kentucky-based attorney.

## V. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for reconsideration by Defendants Capital Equipment & Trading, Coralina Engineering, LLC, and Alexander Chudnovets (DN 60) is **GRANTED IN PART** and **DENIED IN PART**. The motion for authorization of substituted service by Plaintiff Phoenix Process Equipment Co. (DN 66) is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 19, 2017

cc: Counsel of Record