UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00024-CHB

PHOENIX PROCESS
EQUIPMENT COMPANY                                                    PLAINTIFF

VS.

CAPITAL EQUIPMENT
& TRADING CORPORATION, *et al.*                                     DEFENDANTS

## REPORT AND RECOMMENDATION

Spoliation, defined as the intentional destruction or alteration of evidence, is a very serious accusation and, if proven, is a very serious offense.[1] Those claiming spoliation seek to remedy the loss of evidence that would materially affect the disposition of their case. Those accused of spoliation have their personal and professional reputations challenged.

This lengthy trade-secret litigation has been permeated with discovery disputes, now culminating in Plaintiff Phoenix Process Equipment Company ("Phoenix") filing a Motion for Spoliation Sanctions. (DN 240). Phoenix seeks summary judgment in its favor or an adverse inference be given at trial based on Defendants Capital Equipment and Trading Corporation, et.al's ("Defendants") alleged full-scale destruction of evidence relating to Phoenix's claims. Defendants oppose Phoenix's Motion. (DN 243). Phoenix has replied. (DN 250). Nearly a month after Phoenix filed its reply, Defendants filed an objection to certain new evidence Phoenix relied on in its reply and, alternatively, requested leave to file a sur-reply. (DN 255). Phoenix responded to Defendants' objection, arguing Defendants' rebuttal arguments are meritless and delayed. (DN 257).

---

[1] "Spoliation is a very serious allegation." *McCall v. Procter & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3997375, at *3 (S.D. Ohio, Aug. 22, 2019) (citing *The Olinde Rodrigues*, 174 U.S. 510, 528 (1899) (characterizing spoliation as a "serious offense") (add'l citation omitted)). Claims of spoliation are "serious business." *Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 259 n. 2 (W.D. Penn 2012). "They will always implicate professional and personal reputations and are time-consuming and costly to litigate." *Id.*

1

The District Judge in this matter referred Phoenix's Motion for Spoliation Sanctions to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 251). Based on the magnitude of Phoenix's allegations, the undersigned found an evidentiary hearing was warranted. (DN 338). The hearing took place on June 3, 2022. (DN 390). Finding no post-hearing briefing was necessary, the Court considers the matter submitted for ruling.

## I. FINDINGS OF FACT

### A. Events Giving Rise to the Litigation

In 2009, Phoenix, a Kentucky-based company that designs, engineers, manufactures, and services machinery and equipment in the coal industry, entered into a distribution agreement that granted Capital Equipment and Technology Corporation ("Technology Corp.") an exclusive territory to market and sell Phoenix's products. Three years later, Phoenix believed it renewed its distributor agreement with Technology Corp. But Technology Corp. had dissolved in 2011, and Phoenix instead was doing business with Capital Equipment and Trading Corporation ("Trading Corp."). Phoenix claims at some point after entering into the 2012 distributor agreement, it obtained information that Coralina Engineering, LLC ("Coralina") and Electrogorsk Metal Factory ("Elemet") were selling and distributing products very similar to Phoenix's in the region covered by its agreement with Trading Corp.[2]

Phoenix's CEO Gary Drake emailed Vadim Novak, the Chief of the Coal Department for Coralina, on October 6, 2015 to "express sincere concerns" regarding the ongoing distribution agreement between their companies. (DN 240-1, at PageID # 4735). Mr. Drake's email highlighted that Phoenix had not supplied any machines under the agreement since 2013 and that the

---

[2] For a more comprehensive summary of the facts alleged in this case, please see the undersigned's Opinion filed on March 19, 2019 (DN 127) or the District Judge's Opinion filed on January 13, 2017 (DN 57).

"replacement parts business has become virtually nonexistent." (*Id.*). His email continued:

> [W]e are confused and concerned to learn that Cetco/Coralina has an affiliated
> company named Elemet that claims to manufacture Belt Filter Presses and Belt
> Press parts for the Coal Industry in your market areas. A review of their website
> appears to display a PHOENIX Belt Filter Press or a Russian manufactured copy
> being advertised as an Elemet product. The descriptive information even references
> our Phoenix model number (WXG-3.0), but no mention anywhere of PHOENIX.
> Elemet also claim [sic] to have placed 21 of those Belt Filter Presses in your market
> from 2010-2014 at a list of customers that we do not recognize from any inquiries
> from you . . . [.]

(*Id.*). Mr. Drake expressed he was hopeful there was an "innocent explanation" for what appears

to be a significant breach of the 2012 distribution agreement and Phoenix's intellectual property.

(*Id.* at PageID # 4734). Over the next week, several emails were exchanged between Mr. Drake

and Alexander Chudnovets, the CEO and sole member of Coralina and the Chairman of the Board

of Directors at CE&T Corp.[3] (*See* DN 240-1). On October 14, 2015, Mr. Drake ultimately indicated

to Mr. Chudnovets that he found the "illicit activities of Elemet disingenuous" and "it is evident

that Cetco Coralina has undertaken a campaign to intentionally breach our distribution agreement

and misuse our designs and trade secrets in competition with [Phoenix]." (*Id.* at PageID # 4726).

Mr. Drake stated Phoenix would be "immediately pursuing [its] legal options[.]" (*Id.*).

## B. The Lawsuit

The next month, Phoenix filed a lawsuit in Jefferson County Circuit Court against Trading

Corp., Technology Corp., Coralina, and Mr. Chudnovets.[4] (DN 1-2). Defendants removed the

action to this Court on January 11, 2016. (DN 1). Several of Phoenix's claims have been dismissed.

(*See* DN 57; DN 75). Remaining are its claims of breach of contract (Count I) and violation of the

---

[3] Mr. Chudnovets stopped serving on Trading Corp.'s Board of Directors in December of 2015, shortly
after Phoenix initiated this litigation. (*See* DN 193-5, at PageID # 3380).

[4] Phoenix named Elemet as a Defendant in its original and amended complaints but never completed
service on the Russian entity. (DN 1-2; DN 40).

Kentucky Uniform Trade Secrets Act (KUTSA) (Count III) and its allegations of alter-ego liability between and amongst the Defendants and Elemet. (DN 40, at ¶¶ 18-20, 25-28, 32-36, 41-45).

To say the parties have struggled with cooperative discovery is an understatement. At least nine discovery-dispute conferences have been held, (DN 97; DN 104; DN 142; DN 150; DN 157; DN 164; DN 166; DN 180; DN 234), resulting in lengthy motion practice (*see* DN 119; DN 137; DN 182; DN 185; DN 208; DN 229; DN 231). On multiple occasions, the undersigned has ordered Defendants to supplement their discovery responses and document productions. (DN 127; DN 207; DN 212; DN 236; DN 237). Defendants have also been ordered to provide declarations swearing that no further responsive documents exist or, if responsive documents were destroyed, how and why they were destroyed, and why they do not exist in electronic format.[5] (DN 207; DN 236).

In compliance with the Court's Orders, Defendants submitted a declaration signed by Leonid Koshelchenkov on behalf of Coralina and a declaration from Mr. Chudnovets. (DN 229-2). Coralina's Declaration indicates that to the extent any responsive records had been destroyed or lost, "Coralina's personnel are unable to identify or recall what those specific records were or the specific reason why any such records were destroyed or lost, if such occurred." (*Id.* at PageID # 4326). Coralina provided several reasons why this destruction may have occurred: (1) some of the personnel who might have been involved with these records no longer work for Coralina; (2) Coralina has a standard two-year document-destruction policy; (3) Coralina does not have a specific policy for backing up electronic information and allows each employee to determine how he or she treats electronic information on their computers; and (4) electronic records have routinely been deleted to free up space or due to equipment changes and hardware/software malfunctions. (*Id.*).

---

[5] The undersigned has also ordered Phoenix to supplement its discovery responses and production during the litigation, but this Report and Recommendation focuses on Defendants' conduct.

When Coralina learned of Mr. Drake's allegations in October of 2015, it began saving email communications and documents about Phoenix and its claims. (*Id.*). But Coralina declares that "communications or documents between Coralina and other companies or third parties that Phoenix now claims are relevant to the litigation were either deleted in the regular course of business" pursuant to their document-destruction policy or "were not saved because it was not obvious that such records were potentially relevant to Phoenix's allegations at the time." (*Id.* at PageID # 4326-27).

Mr. Chudnovets' Declaration similarly attributes the destruction of any documents that previously existed as "being disposed of long ago" or as being lost due to computer changes and malfunctions. (*Id.* at PageID # 4331). Mr. Chudnovets further indicates that no additional communications are in his possession because he was "generally not personally involved in the purchases or sales of Phoenix equipment . . . and generally had very limited communications by email." (*Id.*). Instead, Mr. Chudnovets purports to have communicated by phone or in person. (*Id.*).

Shortly after receiving these declarations, Phoenix requested a discovery conference with the undersigned to discuss outstanding discovery issues, including spoliation of evidence. (*See* DN 228). Following a telephonic conference, several status reports, and a video hearing, the Court entered an Order permitting Phoenix to file a motion for spoliation sanctions. (DN 236). The Court deemed unsatisfactory Defendants' explanation in their Declarations that communications or documents between Defendants and other companies or third parties were deleted in the regular course of business "because it was not obvious that such records were potentially relevant to Phoenix's allegations at the time." (*Id.* at PageID # 4675). The Court specifically questioned Defendants' explanation when considering Mr. Drake's email to Mr. Novak from October 6, 2015. (*Id.*).

C. Phoenix's Motion for Spoliation Sanctions and Evidentiary Hearing

Phoenix has now filed its motion for spoliation sanctions, requesting the Court grant summary judgment in its favor or permit an adverse inference instruction at trial based on Defendants' intentional destruction of evidence relevant to Phoenix's claims.[6] (DN 240). Phoenix also seeks monetary sanctions for filing this motion and two previous motions to compel discovery from Defendants. (*Id.*). Defendants oppose the requested sanctions, arguing Phoenix has failed to carry its burden of proving spoliation occurred. (DN 243).

At Phoenix's request, the Court scheduled an evidentiary hearing on its Motion for Spoliation Sanctions. (DN 338). The parties filed pre-hearing outlines of the evidence they intended to produce. (DN 351; DN 352). Two days before the March 15, 2022 hearing, Defendants filed a Motion to Stay the Litigation, including the evidentiary hearing, until the Russia-Ukraine Conflict was resolved.[7] (DN 359). The Court postponed the evidentiary hearing to allow for full briefing on Defendants' Motion to Stay. (DN 360).

After denying Defendants' Motion to Stay (DN 369; DN 373; DN 384), the Court rescheduled the evidentiary hearing for June 3, 2022. (DN 386). The day before the hearing, Defendants filed a twenty-one-page objection to the pre-hearing outline that Phoenix had previously filed on March 8, 2022. (DN 389). This filing argues that most evidence Phoenix intended to submit at the evidentiary hearing is inadmissible and should be excluded from

---

[6] Defendants initially argue that Phoenix's Motion for Spoliation Sanctions should be denied since it exceeds the Court's September 22, 2021 Order. (DN 243, at PageID # 5080). While the Court's Order permitting Phoenix to file a spoliation motion discussed reasons why Defendants' Declarations were troubling and not satisfactory, the Court did not specifically limit Phoenix's forthcoming motion in any respect.

[7] On February 24, 2022, Russia launched a "full-scale invasion of Ukraine[,]" striking Ukranian Air bases and other military assets. Vanessa Gera, *Russia-Ukraine: What to know as Russia attacks Ukraine*, AP News (Feb. 24, 2022), https://apnews.com/article/russia-ukraine-joebiden-business-europe-moscow-e88497e7e8d4ad178057b599cc9ec8f6. As of the date this Report and Recommendation issued, the Conflict resulting from Russia's invasion continues.

consideration. (*Id.*). The undersigned started the hearing by noting Defendants' eleventh-hour objection was not well-taken but that Defendants could object to evidence during the hearing as Phoenix sought to introduce it. The Court will address Defendants' objections to admissibility as necessary throughout this report and recommendation.

## II. CONCLUSIONS OF LAW

### A. Defendants' Objection/Motion for Leave to File Sur-reply (DN 255)

The Court starts by addressing Defendants' Objection/Motion for Leave to File Sur-reply, which Defendants filed twenty-eight days after Phoenix's reply brief. (DN 255). Defendants claim new evidence and arguments Phoenix submitted for the first time in its reply should not be considered. (*Id.*).

Whether construed as an objection or a motion for leave to file sur-reply, Defendants' filing is untimely. The Local Rules require response briefs be filed within twenty-one days of service of the motion and reply briefs be filed within fourteen days of service of the response brief. Local Rule 7.1(c). For Phoenix's Motion for Spoliation Sanctions, the Court issued a tighter briefing deadline, giving Defendants fourteen days to respond and Phoenix seven days to reply. (DN 236, at PageID # 4675). Given these deadlines, it defies logic that Defendants would be permitted twenty-eight days to request leave to file a sur-reply, four times as many days as Phoenix had to file its reply brief. *See, e.g., Maatuk v. Emerson Electric, Inc.*, No. 1:16-CV-03023, 2019 WL 582461, at *1 (N.D Ohio Feb. 13, 2019) ("[Plaintiff's] unexplained one-month delay in seeking leave to file a sur-reply renders his motion untimely.").

Had Defendants filed their objection/request for leave to file sur-reply within seven, or even fourteen, days of Phoenix's reply, their motion still would not be well-taken. By holding an evidentiary hearing on Phoenix's Motion for Spoliation sanctions, the Court gave Defendants the

opportunity to respond to the new evidence and arguments Phoenix offered in its reply brief. *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 482 (6th Cir. Aug. 6, 2003) (holding in the context of summary judgment that a non-moving party must be given "adequate opportunity to respond to new evidence" presented in the moving party's reply brief). Defendants' Objection/Motion for Leave to File Sur-reply (DN 255) is therefore **DENIED.**

### B. Phoenix's Motion for Spoliation Sanctions (DN 240)

#### i. Standard of Review

Federal law of spoliation applies to cases that are litigated in federal court. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). Spoliation is widely defined as "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (citation omitted). Spoliation sanctions are appropriate if three conditions are met.

First, the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed. *McCarty v. Covol Fuels No. 2, LLC*, 664 F. App'x 372, 378 (6th Cir. 2016) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted)). A party to civil litigation has "a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quotation omitted).

Second, the accused party must have destroyed the evidence with a culpable state of mind. *McCarty*, 664 F. App'x at 378 (citations omitted). To prove culpability, the party claiming spoliation must show "the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Beaven*, 622 F.3d at 554 (quoting *Residential Funding Corp.*

*v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (add'l citation omitted)).

Lastly, the evidence destroyed must be relevant to the other side's claim or defense. *McCarty,* 664 F. App'x at 378 (citing *Beaven v.* 622 F.3d at 553 (citations omitted)). To establish relevance, the party seeking sanctions must make "some showing indicating the destroyed evidence would have been relevant to a contested issue . . . such that a reasonable trier of fact could find that it would support that claim[.]" *Beaven,* 622 F.3d at 555 (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. July 9, 1998); *Residential Funding Corp.*, 306 F.3d at 107)). The relevance factor does not require proof that the lost or destroyed evidence would be dispositive of the party's claim. *McCarty,* 664 F. App'x at 379.

With respect to spoliation of electronically stored information (ESI), a district court must determine whether ESI that should have been preserved in the anticipation or conduct of litigation was lost because "a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" Fed. R. Civ. P. 37(e). If the loss of information prejudiced the moving party, the court may "order measures no greater than necessary to cure the prejudice[.]" *Id.* at (e)(1).

Upon finding that sanctions are warranted, the Court has significant discretion in fashioning a suitable remedy. *See Adkins v. Weaver*, 554 F.3d 650, 652-53 (6th Cir. 2009) (en banc). "Because failures to produce relevant evidence fall 'along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality,' the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53.

### ii. Defendants' Duty to Preserve Evidence

As stated above, an obligation to preserve evidence develops when a party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant

to future litigation." *Goetz*, 531 F.3d at 459 (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)); *see also Beaven v.* 622 F.3d at 553 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1988)). Often this duty arises earlier than when an actual lawsuit is filed. *In re Black Diamond Min. Co., LLC*, 514 B.R. 230, 237 (E.D. Ky. July 22, 2014). The first step, then, is to determine the "trigger date," or "the date a party is put on notice that it has a duty to preserve evidence." *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn. 2005).

During the evidentiary hearing, Defense counsel conceded that Trading Corp., Coralina, and Mr. Chudnovets had notice of Phoenix's forthcoming claims as of October 14, 2015, when Mr. Drake, Phoenix's CEO, emailed Mr. Novak, an Executive at Coralina.[8] (*See* DN 243, at PageID # 5100). The parties, however, dispute the scope of the duty to preserve imposed by the October 14, 2015 email exchange. Defendants claim this email exchange put them on notice that communications and documents relating to their dealings with Phoenix could be relevant to future litigation. But, according to Defendants, they could not reasonably anticipate that documents and information from their purchases of Elemet equipment and sales to third-party end users would be relevant.

Contrary to Defendants' position, the email exchange starting on October 6, 2015 and concluding on October 14, 2015, made the relevance of information and documents relating to the Defendants' transactions with other entities reasonably foreseeable. Mr. Drake's October 6, 2015

---

[8] Defendants do not make the same concession regarding Defendant Technology Corp. Defendants maintain that because Technology Corp. dissolved in 2011, it could not have reasonably been put on notice of the need to preserve evidence based on a 2015 email exchange. Phoenix believes Mr. Chudnovets' previous ties to Technology Corp. thwarts Technology Corp.'s alleged lack of knowledge of Phoenix's forthcoming litigation. Mr. Chudnovets admits he served as the CEO of Technology Corp. from approximately 1994 until when it was formally dissolved in 2011 and that he owned 90% of the stock of Technology Corp. until its dissolution. (DN 243-2, at PageID # 5116). Regardless of these ties, because Technology Corp. apparently dissolved four years before the litigation began, the Court finds it did not share the same duty to preserve as the other three Defendants in this action.

email to Mr. Novak specifically referenced his belief that Elemet was affiliated with Cetco/Coralina, was manufacturing belt filter presses in Phoenix's market area, and appeared to be advertising Phoenix belt filter presses on its website as its own product. (DN 240-1, at PageID # 4733-34). Another of Mr. Drake's emails to Mr. Novak discussed how Coralina's website showed Elemet as one of its partners in direct violation of Phoenix and CETCO's distributor agreement; how Phoenix had learned of Coralina's ownership of the Elemet manufacturing plant; and how Elemet has a direct copy of a Phoenix Belt Filter Press on their website, which would require direct access to Phoenix's machines, proprietary parts, and technical information. (*Id.* at PageID # 4728). Finally, Mr. Drake's October 14, 2015 email, notifying Mr. Chudnovets of his intent to immediately pursue legal options, explained he found Mr. Chudnovets' attempts to distance himself from the "current distribution agreement with CETCO and the illicit activities of Elemet disingenuous." (*Id.* at PageID # 4726). Mr. Drake concluded: "It is evident that Cetco Coralina has undertaken a campaign to intentionally breach our distribution agreement and misuse our designs and trade secrets in competition with us." (*Id.*). From these emails, Trading Corp., Coralina, and Mr. Chudnovets should have known evidence relating to their transactions and dealings with Elemet would likely be relevant to Phoenix's forthcoming litigation and should have been preserved. *See Goetz*, 531 F.3d at 459.

With the timing and scope of Defendants' obligation to preserve evidence established, the next question is whether Defendants took reasonable steps to maintain relevant information and documents. Once the duty to preserve attaches, the party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Forest Labs, Inc. v. Caraco Pharmaceutical Labs, Ltd.*, No. 06-CV-13143, 2009 WL 998402, at *3 (E.D. Mich. Apr. 14, 2009) (quoting *Zubulake v. UBS Warburg LLC*, 220

F.R.D. 212, 218 (S.D.N.Y. 2003)). In the electronic-discovery context, a party must "take reasonable steps to preserve" relevant information. Fed. R. Civ. P. 37(e). Reasonable steps "do[] not call for perfection." *Id.* at advisory committee's note to 2015 amendments. Rule 37 generally "requires compliance with a litigation hold, and for counsel to begin 'monitoring the party's efforts to retain and produce the relevant [ESI].'" *Franklin v. Shelby Cnty. Bd. of Educ.*, No. 20-cv-02812-JPM-tmp, 2021 WL 6066673, at *5 (W.D. Tenn. Sept. 28, 2021) (quoting *Lokai Holdings v. Twin Tiger USA LLC*, 15cv9363 (ALC) (DF), 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018)).

Phoenix alleges that none of the Defendants instituted a litigation hold following the October 2015 email exchange. Defendants submit no evidence to refute this accusation.[9] Instead, Defendants provide multiple, conflicting explanations and excuses for why relevant information and documents were not preserved. While Phoenix bears the burden of proving that spoliation occurred, Defendants' failure to institute, distribute, and monitor litigation holds on information and documents relating to Phoenix's allegations in this case demonstrate that Defendants did not "ensure the preservation of relevant documents." *Forest Labs*, 2009 WL 998402, at *3.

Though Defendants clearly had a general duty to preserve more information than simply their communications and dealings with Phoenix, Phoenix still must demonstrate that the categories of documents it believes Defendants destroyed should have been preserved under a litigation-hold. In its Motion for Spoliation Sanctions, Phoenix identifies the following categories of allegedly spoliated evidence: (1) Information on Defendants' websites; (2) Technical documents and communications relating to purchases of Elemet equipment; (3) Email communications

---

[9] Defendants claim that the Court never asked them to make Declarations on what litigation holds were issued. While the Court's March 19, 2021 Opinion did not specifically ask Defendants to describe their litigation holds, such actions implicitly fall into the Court's request for Coralina to detail how and why specific documents were destroyed. (DN 207, at PageID # 4105, 4107). Regardless, Defendants had the opportunity to present evidence of any litigation holds in responding to Phoenix's Motion for Spoliation Sanctions and during the evidentiary hearing but declined to do so.

between Defendants and Elemet and Defendants and third-party end users; and (4) Documents relevant to alter-ego theory. (DN 240). Phoenix's pre-hearing outline expanded on category (2), specifically identifying missing purchase orders, invoices, contracts, technical drawings/communications, and project sites related to belt-filter-press sales between Defendants and Elemet as identified in a spreadsheet produced by Defendants in discovery. (DN 351). The Court will evaluate each category of documents under the spoliation criteria.

### iii. Technical Documents and Communications Relating to Elemet Transactions

Taking these categories out of order, the Court starts with whether technical documents and communications relating to the purchase of Elemet equipment were intentionally destroyed. Phoenix argues Defendants must be withholding or must have destroyed technical documents and communications relating to purchases of Elemet Equipment. (DN 240, at PageID # 4704). Phoenix reasons that when Defendants purchase belt filter presses from manufacturers, like Phoenix or Elemet, for use by a third party, they will exchange specific information, including quotes, proposals, layouts, general arrangement drawings, invoices, shipping and customs forms, installation and operations manuals, and other technical documentation. (*Id.* at PageID # 4704-05). Though Defendants preserved and produced thousands of pages of this type of documentation related to purchases of Phoenix belt filter presses and spare parts dating back to 2004, Phoenix asserts Defendants have failed to produce any similar documentation related to their purchases of twenty-five Elemet belt filter presses. (*Id.* at PageID # 4706).

In discovery, Defendants produced a spreadsheet identifying purchases and sales of Phoenix and Elemet equipment from November 2009 to September 2014. (DN 244). Phoenix highlights the final transaction listed on Defendants' sales spreadsheet, reflecting that on September 17, 2014, Coralina sold an Elemet belt filter press to Trading Corp., which Trading

Corp. then sold to end user DTEK. (DN 266-1). Phoenix claims this project with DTEK was not completed until after this litigation began, meaning Coralina should have maintained technical documents associated with the transaction "from a business perspective." (DN 240, at PageID # 4710).

During the evidentiary hearing, Phoenix emphasized missing technical documents and communications from three additional Elemet transactions. The first, the "Krasnobrodsky project," and the second, the "KTK-2 Project" were listed on the spreadsheet of sales Defendants produced to Phoenix in discovery. The Krasnobrodsky and KTK-2 equipment sales occurred on May 3, 2012 and December 7, 2011, respectively. (DN 266-1). For the Krasnobrodsky Project, Defendants only produced an invoice of sale. Phoenix notes that no serial number is listed on this invoice. Yet somehow Defendants provided a serial number for the equipment sold on the sales spreadsheet they produced in discovery. Phoenix questions how Defendants were able to list the serial number while failing to produce any communications or documentation reflecting this serial number. Phoenix makes the same arguments for the KTK-2 Project. The invoice Defendants produced for this project did not list a serial number for the equipment. Defendants also produced a contract for this project. The contract, oddly enough, listed serial numbers that do not match the serial numbers Defendants provided for the transaction in the sales spreadsheet.

The third transaction, the "Dobropolskaya Project" was not listed on the Defendants' sales spreadsheet. Defendants informed Phoenix in October of 2015 that the Dobropolskaya Project had been cancelled. (DN 240-1, at PageID # 4730). But when Matt Fenzel, a project manager at Phoenix, attended a trade show in Russia two years later, he discovered Defendants had moved forward with the Dobropolskaya Project. Mr. Fenzel learned the details of the Dobropolskaya project from a CETCO brochure. (P's Ex. 6 Evid. Hrg.). Because this project would have been

active in 2015, when Defendants' duty to preserve evidence attached, and because Defendants omitted this project from the spreadsheet, Phoenix claims evidence of this project was intentionally withheld or destroyed.

Defendants respond that Phoenix provides "[m]ere conjecture" that certain documents should have existed relating to the Elemet transactions. (DN 243, at PageID # 5089). Phoenix's speculation, Defendants argue, is not admissible evidence proving Defendants destroyed these records. Nor do Defendants feel that Phoenix's reliance on Defendants' production of documents related to Phoenix transactions constitutes evidence that the same information was exchanged in Elemet transactions. (*Id.* at PageID # 5090). Even if these documents and communications had once existed, Defendants submit that Phoenix cannot prove that each Defendant had a duty to preserve this material or that each Defendant intentionally or negligently destroyed the material. (*Id.*).

To counter Phoenix's allegations of intentional destruction, Defendants provide excuses for why these documents were not preserved. For Trading Corp., Defendants point to Hurricane Harvey's damage to their corporate office in Houston, resulting in destruction of physical documents and electronic documents on computers that weren't backed up. (*Id.* at PageID # 5091). For Coralina, Defendants cite to the alleged two-year document-destruction policy, and assert that "at most, Coralina may have had an obligation to preserve technical documents and communications for _one_ Elemet transaction in 2014, but not all 25 transactions." (*Id.*). Defendants claim that Phoenix fails to establish how the documents and communications for this single Elemet transaction are relevant beyond the discovery already produced in this lawsuit – most notably, the sales spreadsheet produced by Coralina. (DN 243, at PageID # 5101-02).

a. Coralina

The Court first addresses the admissibility of the CETCO brochure containing information about the Dobropolskaya Project. Matt Fenzel testified during the hearing that the portions of the brochure presented as Phoenix's Exhibit 6 were a true and accurate copy of the brochure he collected from CETCO at a trade show on June 9, 2017. Defendants objected they were unaware portions of this brochure were going to be presented at the hearing because Phoenix had previously produced only the cover sheet of the brochure with its evidentiary-hearing outline.[10] Phoenix clarified its evidentiary hearing outline referenced two specific pages from the brochure.

While Phoenix's outline of evidence did not clearly identify the relevant page from the CETCO brochure relating to the Dobropolskaya Project (Phoenix Bates label 002502), Defendants had notice Phoenix was planning to introduce additional portions of the brochure before the hearing. (*See* DN 389, at PageID # 13017-18). And regardless, Defendants could have made appropriate objections once the evidence was introduced during the hearing and chose to only rely on their alleged lack of advanced notice. This objection is not well taken, and the Court will consider the portions of the CETCO brochure at Phoenix's Exhibit 6 when evaluating spoliation.

Defendants' duty to preserve evidence extended to the technical documents and communications related to their purchases and sales of Elemet-manufactured equipment. As detailed above, Mr. Drake's emails put Defendants on clear notice that evidence relating to their transactions and dealings with Elemet would likely be relevant to Phoenix's forthcoming litigation and should have been preserved.

---

[10] On the eve of the hearing, Defendants objected that the CETCO/Coralina brochure that Phoenix produced is incomplete, unauthenticated, and inadmissible as evidence. (DN 389, at PageID # 13017-18). The Court denied these objections at the start of the hearing, indicating that Defendants could object as needed during the hearing.

Defendants attempt to claim no duty existed because Phoenix has not demonstrated the allegedly deleted documents ever existed. The fact that Phoenix creates certain documents or provides certain communications related to their transactions, according to Defendants, does not mean other entities do the same in their transactions. Evidence Phoenix introduced at the evidentiary hearing contradicts Defendants' position. Phoenix presented a contract between Coralina and Elemet labeled "Confidential Information" and stamped as "Commercial Secret." (P's Ex. 9, Evid. Hrg.). This contract required Elemet, the supplier, to provide various documents to Coralina, the buyer, at different points through the life of the transaction. (*Id.*). These documents included: (1) the sum of all specifications (appendices) constituting the total price of the contract; (2) an acceptance certificate; (3) an itemized packing list when packing is completed; and (4) an invoice, delivery note, certificate of completion, consignment note, and packing list at time of delivery. (*Id.*). The terms of this contract support that for at least transactions between Coralina and Elemet, certain technical documents and communications were required to be exchanged and existed at one time.

Phoenix's evidence regarding the Krasnobrodsky Project and the KTK-2 Project likewise demonstrate that technical documents and communications for these projects once existed and likely existed after the litigation began. Defendants were obviously able to cull serial numbers from some unknown location to include in their sales spreadsheet. This evidence not only proves that more documents relating to Krasnobrodsky and the KTK-2 Projects likely existed after Coralina's duty to preserve arose but also allows for an inference that other technical documents and communications relating to other Elemet transactions existed as well.

Coralina's failure to preserve technical documents and communications relating to Elemet transactions was negligent, at a minimum. Coralina claims relevant documents no longer exist

because they were deleted pursuant to its two-year document-destruction policy. Phoenix produced copies of Coralina's "Records Management Guide" in both Russian and English. (DN 357, at PageID # 11653-11706). Coralina's Declaration, submitted by Mr. Koshelchenkov, references this Guide as Coralina's "document-destruction policy," under which paper records in this case were destroyed. (DN 240-2, at PageID # 4739 (identifying the "document destruction policy" at Bates-labeled Defendants-014502-014555)).

Nowhere does the Guide express a similar document-destruction policy to that which Defendants rely on. The Guide does not mention documents being destroyed in the regular course of business after two years or whether any categories of documents are exempt from destruction. Because Coralina provides no evidence that such a policy exists elsewhere, the Court finds that if the policy existed at all, it was applied informally and inconsistently.[11]

Defendants' production of thousands of documents relating to Phoenix transactions dating back to 2004 further belies Coralina's claimed application of its two-year document-destruction policy. (*See* P's Ex. 2 Evid. Hrg.; DN 240-7; DN 240-11). Why were Phoenix-related documents excepted from Coralina's supposed policy when documents relating to Elemet transactions seem to have been destroyed nearly wholesale? While Coralina was not expected to keep all documents related to its business transactions for an indefinite period, *see Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003), its attempt to hide behind a vague and inconsistently applied policy constitutes negligence.

Even if the Court were to take Coralina's statements regarding its document-destruction policy as true and accurate, Coralina still had an obligation to suspend any such policy as of

---

[11] Defendants have stated several times throughout the litigation that "Coralina's standard corporate practice is to only retain communications for two (2) years and only retain contracts for five (5) years." (*See* DN 120, at PageID # 2121).

October 14, 2015, the trigger date. Phoenix points to at least two Elemet transactions, DTEK on September 17, 2014, and Dobropolskaya at some point in 2015, where technical documents and communications should have still been in existence when Coralina was obligated to suspend their policy. Coralina's explanation is "it was not obvious that such records were potentially relevant to Phoenix's allegations" as of October 14, 2015. This excuse is not persuasive. Repeating the discussion of duty above, Mr. Drake's emails undoubtedly put Coralina on notice that evidence relating to transactions with Elemet would likely be relevant to Phoenix's forthcoming claims.

Excuses that Coralina offers regarding the destruction of electronic evidence fare no better. To list a few, Coralina claims: some personnel involved with these records are no longer employed by Coralina, that it does not have a specific policy on or routine practice of backing up electronic information, that it allows individual employees autonomy on managing electronic records on their computers, and that computer changes or hardware and software malfunctions caused documents to be lost or destroyed. If Coralina gives individual employees autonomy over their computers, how can it know whether its employees have destroyed documents they are under a duty to preserve? And, if documents were destroyed during computer changes or software malfunctions, how were thousands of Phoenix documents spared? The questions left open by Coralina's explanations lead the Court to believe Coralina acted negligently in preserving ESI in this case. Coralina even admits that these excuses are "shortcomings" in satisfying its duty to preserve additional records. (DN 243, at PageID # 5092).

To the extent that the allegedly destroyed evidence constitutes ESI, Defendants claim Rule 37(e) requires Phoenix to demonstrate the evidence could not have been replaced through additional discovery. (DN 243, at PageID # 5093). Defendants suggest Phoenix should have tried to secure the documents from Elemet or taken the depositions of Defendants' corporate

representatives. (*Id.* at PageID # 5092-93). Phoenix explains that obtaining this evidence in an alternative manner would be impossible since Elemet, Coralina, and Mr. Chudnovets are located in Russia, beyond the reach of the Hague Convention.[12] (DN 250, at PageID # 5680). Although Phoenix does not account for its decision not to depose Defendants' Rule 30(b)(6) representatives, there is no evidence that Coralina's corporate representative would have offered testimony that would negate spoliation. As discussed above, Coralina's excuses for destruction from its Declaration are conflicting and demonstrate negligence. Phoenix's repeated attempts to secure the electronic information suffice under Rule 37(e).

In both their response brief and during the evidentiary hearing, Defendants emphasized that if they had truly intended to destroy documents relevant to Phoenix's claims, they would not have disclosed any evidence or made any productions. Their compliance with Phoenix's discovery requests, they believe, "support[s] a finding they did not intentionally destroy such materials." (DN 243, at PageID # 5094). The Court disagrees. Wholesale destruction of evidence would have been far more obvious. Coralina's indiscretions here were less conspicuous. Coralina discounts that the destruction of even one relevant document, or, as here, one limited category of relevant documents, can constitute spoliation.

In a final attempt to justify destruction, Coralina asserts that production of DTEK documents would have been duplicative or cumulative of documents already produced in discovery. But, as Defendants themselves have argued, entities conduct transactions using different methods. Therefore, it is unlikely that communications or technical documents for each individual transaction listed on Defendants' sales spreadsheet were identical. And it is unclear how Coralina can know with certainty that technical documents for additional transactions would have

---

[12] The undersigned discussed the Hague Convention's applicability to Russian entities in detail in its March 19, 2019 Opinion. (DN 127, at PageID # 23332-34).

been duplicative when Coralina itself states the documents do not exist. Without seeing technical documents or communications related to these transactions, beyond invoices and contracts, whether the DTEK or Dobropolskaya documents would have been cumulative of other discovery is not apparent.

Phoenix's last hurdle, establishing relevance of the destroyed documents, is easily met. Phoenix has demonstrated that the destroyed technical documents and communications related to the DTEK and Dobropolskaya projects would have been relevant to two contested issues - whether Defendants misappropriated Phoenix's trade secrets by providing confidential information or trade secrets to Elemet. Such technical documents and communications would also bear on whether Defendants' transactions with Elemet violated Phoenix's Distributor Agreement with Trading Corp. Based on this analysis, Phoenix has put forth admissible evidence demonstrating that Coralina negligently destroyed relevant technical documents and communications from their transactions with Elemet.

### b. Trading Corp.

Like Coralina, Trading Corp. had a duty as of October 14, 2015 to preserve evidence related to Phoenix's forthcoming claims, including evidence of transactions with Elemet. Trading Corp. explains that if such evidence ever existed, it was destroyed when Hurricane Harvey hit Trading Corp.'s corporate offices in August of 2017.  Throughout this litigation, the Court has recognized Trading Corp.'s scarce production of discovery based on its representations that physical and electronic evidence was destroyed by Hurricane Harvey.[13] The Court noted in its March 19, 2021 Opinion, however, that Hurricane Harvey was not necessarily a viable excuse for destruction of

---

[13] *See* DN 207, at PageID # 4104 ("Trading Corp. cannot produce documents that were destroyed by Hurricane Harvey[.]"); DN 127, at PageID # 2347 ("Defendants again cannot produce documents that no longer exist, especially when such documents have been unintentionally destroyed by natural disaster."))

email communications. (DN 207, at PageID # 4112). The Court determined that Maria Gordon's access to emails she had saved since 2015 on her Trading Corp. computer created "a reasonable inference that responsive emails may exist that have not been produced."[14]

At the evidentiary hearing, Phoenix presented emails that Defendants produced in 2018, a year after Hurricane Harvey allegedly destroyed all documents in their offices, that are labeled as "Houston DTI." Phoenix explained that "DTI" stands for "disc to image," which is when an image is taken off a hard-drive or computer. Defendants' labeling of their production as Houston DTI, Phoenix believes, indicates that somebody was able to access and backup Trading Corp.'s electronic documents after Hurricane Harvey. Defendants responded that "Houston DTI" is an administrative entity at defense counsel's law firm that printed copies of these emails a long time ago in the case.

Despite Phoenix filing its complaint in state court in December of 2015 and Defendants removing the action in January of 2016, a scheduling order for the case was not entered until September 7, 2017 because of jurisdictional motion practice. (*See* DN 93). Hurricane Harvey first hit Houston two weeks before the Scheduling Order in this case was entered. While Trading Corp. was on notice to preserve relevant documents for nearly two years before Hurricane Harvey hit, they were not obligated to produce such documents until they were requested in discovery, which could not occur until a scheduling order was entered. Trading Corp., therefore, did not act negligently in storing physical documents in their corporate offices or failing to create backups of their electronic data before Hurricane Harvey damaged its Houston office.

---

[14] Since 2011, Maria Gordon has been Trading Corp.'s President and Secretary and "oversees all aspects of the operation of CE&T Corp." (DN 243-3, at PageID # 5165). Ms. Gordon served as Secretary and Vice-President of Trading Corp. from 2009-2011. (*Id.*). Ms. Gordon was also previously the Chief Financial Officer of Technology Corp. and an employee of the same from 1997 to late 2009 or early 2010. (*Id.*). In this lawsuit, Ms. Gordon was deposed individually and as Trading Corp.'s Rule 30(b)(6) representative.

Unlike Coralina's vague and conflicting excuses for missing evidence, the Court finds Trading Corp's representations as to the destruction caused by a catastrophic natural disaster to be reliable and trustworthy. Phoenix's production of several documents labeled as "Houston DTI" produced in 2018 does not change this conclusion. As Defendants explained, "Houston DTI" was an outsourced entity that printed copies of documents at some point in the litigation. This labeling alone does not constitute evidence of negligent or intentional destruction. Because Phoenix cannot establish the requisite culpability for Trading Corp.'s loss of evidence relating to Elemet transactions, spoliation sanctions are not warranted.

iv. Email Communications Between Defendants and Elemet, between Defendants and Third-Party End Users, and among Defendants

Phoenix argues that Defendants withheld or destroyed internal emails between the Defendants, emails between themselves and Elemet, and emails between themselves and third-party end users of Elemet Equipment. In support, Phoenix submits it is unbelievable that a company doing tens of millions of dollars in business in the twenty-first century did not communicate with contracting parties and third-party end users by email. (DN 240, at PageID # 4706-07). This unbelievability, Phoenix asserts, is compounded by the fact that Defendants saved and produced thousands of emails between themselves and Phoenix dating back to 2004. (*Id.*). Phoenix further suggests Defendants' privilege log proves emails were sent among Defendants after the litigation began, debunking their claimed nonuse of email. (*Id.*).

Defendants offer explanations for why no emails from these categories were produced in discovery. As to Trading Corp., Defendants again cite to Hurricane Harvey's damages to its corporate office, resulting in destruction of physical documents and loss of electronic documents since the computers were not backed up. (DN 243, at PageID # 5094). Trading Corp. also identifies periodic deletions of electronic records in the normal course of business and its standard practice

of communicating by phone as justification for the dearth of email communications. As to Mr. Chudnovets, Defendants claim he was unable to locate any relevant email communications because he was not personally involved in purchases/sales or day-to-day operations, and he had very limited communications by email. (*Id.* at PageID # 5095). Defendants do not offer specific excuses for Coralina but rely on the fact that the Court's March 19, 2021 Opinion directing searches of Ms. Gordon's and Mr. Chudnovets' emails did not extend to Coralina. (*Id.*).

Defendants further dispute that any allegedly lost emails would support Phoenix's remaining claims. They maintain Phoenix's mere conjecture cannot constitute admissible evidence that additional emails existed. Moreover, Defendants allege Phoenix should have deposed Defendants' corporate representatives if they wanted to ask questions regarding the subject matter of alleged emails. (*Id.* at PageID # 5096).

The category of documents that Phoenix claims was spoliated here is far too broad. Defendants did not have a duty based on Mr. Drake's October 14, 2015 email to preserve all email communications among the Defendants, between Defendants and Elemet, and between Defendants and third-party end users of Elemet equipment. Defendants' duty to preserve emails, instead, would have extended only to emails relating to Phoenix's forthcoming legal claims. Based on the information in Mr. Drake's emails, Defendants were on notice to preserve emails relating to transactions with Phoenix, transactions with Elemet, and transactions involving Phoenix equipment or Elemet equipment.

When adjudicating Phoenix's Motion to Compel, the undersigned found it "unbelievable that corporations conducting million-dollar equipment sales would rarely communicate by e-mail." (DN 207, at PageID # 4112). The undersigned continued: "Commonsense dictates that at least some email communications between the Defendants exist or existed relating to the purchase

24

and sale of equipment within the territory. There is a difference between a requesting party's pure speculation that more documents exist and a party's reliance on commonsense, along with other evidence." (*Id.*). Defendants claim because the Court only made these statements regarding Trading Corp.'s production of emails from Maria Gordon's computer, the Court's statement did not establish "Coralina, Mr. Chudnovets, or Technology failed to preserve emails or were involved in destroying emails to which Trading Corp. was a party." (DN 243, at PageID # 5094-5095).

Defendants are correct that the Court's March 19, 2021 Order provided specific instructions for Trading Corp. to conduct additional email searches based on the parties' arguments in their motions to compel. But the Court requiring these specific searches did not extinguish the remaining Defendants' obligations to produce relevant e-mail communications responsive to Phoenix's discovery requests. (*See, e.g.,* DN 193-3, at PageID # 3363-65). The Court, therefore, reiterates its earlier logic and remains doubtful of Coralina and Mr. Chudnovets' assertions that they rarely communicate by email.

Despite the Court's doubts regarding Defendants' alleged non-use of email, Phoenix cannot establish spoliation occurred because it fails to prove relevancy. Phoenix has not established the contents of the allegedly missing emails and how such emails would support its claims in the case. Defendants' privilege log does not establish emails relevant to Defendants' transactions and relationship with Elemet were deleted; it only shows certain email communications were exchanged between Defendants and counsel relating to this litigation.[15] That the privilege log indicates the parties communicated by email in one instance does not lead to the necessary conclusion that Defendants are lying about their general non-use of email.

---

[15] It is unnecessary to address Defendants' objections to the admissibility of the privilege log here because even if the existence of the emails in the privilege log is considered, the Court finds Phoenix still cannot meet the spoliation criteria.

Beyond the Defendants' privilege log, Phoenix relies only on the fact that Defendants produced thousands of email communications between themselves and Phoenix in discovery. Phoenix again reasons that if these types of emails existed related to Phoenix transactions, the same types of emails should have existed for Elemet transactions. The Court found this position persuasive above because Defendants' disproportionate production of technical documents and communications related to Phoenix sales, combined with other evidence that such documents existed and were destroyed, met the spoliation criteria. The same is not true for Defendants' emails. Phoenix simply has not provided evidence sufficient to prove Defendants destroyed emails, negligently or intentionally, that would support Phoenix's claims in this case.

v. Information on Defendants' Websites

Phoenix claims that Defendants have intentionally deleted relevant evidence from their websites on numerous occasions since the litigation began. (DN 240, at PageID # 4702). This deleted evidence, according to Phoenix, included reference to a "subsidiary" relationship between the parties and reference to Defendants' supplying Phoenix belt filter presses to sites where they sold Elemet counterfeit belt filter presses. (DN 240-4; DN 240-6). Phoenix also emphasizes Defendants have deleted the entire websites for both cetco.us and cetco.ru, which previously detailed the relationships between Defendants. (DN 240-5).

Defendants respond any duty to preserve evidence in this litigation does not include Defendants being enjoined from changing their websites. (DN 243, at PageID # 5086). Defendants allege the website screenshots provided by Phoenix are neither properly authenticated under Federal Rules of Evidence 901 and 902 nor appropriately translated under Federal Rule of Evidence 604. (*Id.* at PageID # 5086-87). Even if this evidence was properly admissible, Defendants maintain the website screenshots do not establish each Defendant had a duty to

preserve information. Defendants explain cetco.us and cetco.ru no longer exist because Trading Corp. has closed its physical offices and stopped operations. (*Id.* at PageID # 5088). Defendants further submit Phoenix could have deposed Defendants' corporate representatives but declined to do so and has not attempted to obtain the allegedly deleted information through website hosts or archiving websites. (*Id.* at PageID # 5089).

In reply, Phoenix relies on Mr. Drake's affidavit stating Defendants' website changes were not in the regular course of business but were "targeted deletions of information well after the filing of this lawsuit" to remove evidence of Defendants' culpability. (DN 250, at PageID # 5675). Defendants' website deletions, Phoenix argues, demonstrates their general willingness to destroy or hide other evidence relevant to the case as well. (*Id.*).

To start, the Court finds Defendants' objections to the authenticity and translations of Phoenix's Bates Label Documents 00561-00562 (DN 240-6, at PageID # 4786-87) are well taken. Mr. Drake admits to using his Google Chrome browser to translate this website, and the screenshot itself indicates translation through Google. (DN 250-2, at PageID # 5693). A Google translation alone is not sufficiently reliable to make it admissible. *Novelty Textile, Inc. v. Windsor Fashions, Inc.*, No. CV-12-05602 DDP (MANx), 2013 WL 1164065, at *3 (C.D. Cal. Mar. 20, 2013); *see also D.O.N.C. v. BPH Mich. Grp., LLC*, No. 20-11265, 2021 WL 5103918, at *1 (E.D. Mich. Sept. 20, 2021) (finding defendants' reliance on Google Translate was not acceptable because it was not accompanied by a certified translation). It is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Chen v. Wai? Café, Inc.*, No. 10 Civ. 7254, 2016 WL 722185, at *6 n.5 (S.D.N.Y. Feb. 19, 2016). Because Phoenix Bates-Label documents 00561-00562 are not accompanied by a certified translation, this document will not be considered in evaluating Phoenix's claims of spoliation.

The same is not true for Defendants' objections to the remaining website screenshots Phoenix has submitted, Phoenix Bates Label Documents 00612-00638 (DN 240-4). Rule 901(a) provides "[t]he requirement of authentication . . . [as] a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Generally, "[t]o authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website . . . for example a web master or someone else with personal knowledge[.]" *Fish v. Stone, Higgs, & Drexler, P.C.*, No. 2:17-cv-02093-SHM-EGB, 2017 WL 6757575, at * 6 (W.D. Tenn. Dec. 29, 2017) (quoting *St. Luke's Cataract & Laser Inst. v. Sanderson*, No. 8:06-CV-223-T-MSS, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006)). One court has noted that "an affidavit of a witness, when viewed in combination with circumstantial indicia of authenticity (such as the existence of the URL, date of printing, or other identifying information) would support a reasonable juror in the belief that the documents are what the proponent says they are." *Foreward Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (collecting cases); *see also Grissom v. Ill. Central RR Co.*, No. 1:13-cv-228, 2014 WL 12788729, at *5 n. 6 (E.D. Tenn. Feb. 3, 2014) (noting that attempts to authenticate may include providing specific information about dates and times when websites were allegedly visited).

With its reply, Phoenix submitted an affidavit from its CEO, Mr. Drake, certifying the screenshots he took of the Defendants' websites "are accurate depictions of the websites as they appeared when [he] visited them and that the website addresses (URLs) depicted on the screenshots are web addresses for these web pages as of the dates [he] visited them."[16] (DN 250-

---

[16] Defendants objected to the admissibility of Mr. Drake's affidavit the day before the evidentiary hearing, arguing his statements about visiting Defendants' websites are conclusory, based on hearsay, and not based on personal knowledge. (DN 389, at PageID # 264-1). When Mr. Drake took the stand during the evidentiary hearing, Defendants again objected to Mr. Drake's statements regarding his visits Defendants' websites as hearsay. Upon

2, at PageID # 5693). Before making this certification, Mr. Drake comprehensively recounted his visits to the various websites at issue, providing dates or estimated dates for the various screenshots. Based on the above authority, Mr. Drake's affidavit permits a reasonable belief that the documents are what Mr. Drake says they are, as required by Rule 901(a).

Mr. Drake's affidavit further addressed translation, indicating that the screenshots were translated using the website's English-version link. (*Id.*). During the evidentiary hearing, Mr. Drake testified he did not have an interpreter provide certified translation of the website screenshots because the Russian websites used a universal translator and directly provided an English version of the website. The Court finds these circumstances distinguishable from the certified-interpreter requirement since the cetco.ru/us/ website provided the translation. By using the English version of the website, Phoenix in essence is using a translation that Defendants broadcast to the public. For these reasons, the Court considers the website screenshots at DN 240-4 to be admissible evidence.

To the extent Defendants object to the admissibility of Phoenix's screenshots at DN 240-5, showing simply that the servers for cetco.us and cetco.ru could not be located, such objections are overruled.[17] Again, Mr. Drake's affidavit authenticates the documents and translation does not appear to be at issue.

---

further review of Mr. Drake's affidavit and testimony, the Court will not exclude this evidence. Mr. Drake testified to his own personal experience in visiting the Defendants websites and to what he saw and screenshotted.

[17] In Footnote 9 of its Motion for Spoliation Sanctions, Phoenix identifies that the cetco.us and cetco.ru websites provided abundant evidence to support Phoenix's claims that Defendants are alter-egos of each other. (DN 240, at PageID # 4704-05, n. 9). Phoenix refers the Court to exhibits filed at DN 123-5 and 123-9 that show screenshots of Defendants' websites. (*Id.*). Because Phoenix has made no effort to authenticate these screenshots and only briefly mentions them in a footnote, the Court will not consider these exhibits in analyzing spoliation. Whether these screenshots can be properly admitted as evidence for purposes of summary judgment or at trial remains a question for the District Judge to consider.

With admissibility addressed, the Court moves to the three-factor spoliation analysis. Phoenix meets the first two requirements – duty and culpability. Defendants' duty to preserve evidence extended to information contained on their websites. While it may be true Defendants were not explicitly enjoined from altering their websites by virtue of the litigation, Defendants were still required to maintain information relevant to the claims in this litigation before deleting or altering their websites. Defendants' valid reason for shutting down the cetco.ru and cetco.us websites did not obviate their duty to preserve. Their failure to maintain the website information before alteration or destruction was negligent.

But Phoenix runs into trouble with the third requirement – relevancy. Once more, this inquiry does not require proof that the destroyed evidence is dispositive of the party's claim but only that the destroyed evidence would support the party's claim. *McCarty*, 664 F. App'x at 379; *Beaven*, 622 F.3d at 555. Even under this less onerous relevancy standard, the deleted website evidence here does not necessarily support Phoenix's claims.

The parties have agreed in other pending filings that federal courts sitting in diversity apply choice of the law rules of the forum state. (*See* DN 295, at PageID # 9341). Kentucky applies the law of the state of incorporation to alter-ego issues, meaning Phoenix's alter-ego claims as to Trading Corp. will be evaluated under Texas law and its claims against Technology Corp. would be evaluated under Delaware law. (*Id.* at PageID # 9341-42). Without delving into the specifics of Delaware and Texas's alter-ego laws, a job better left for the District Court when addressing the parties' summary judgment motions, the Court notes under either state's law, evidence of a parent/subsidiary relationship and the extent of such relationship bears on alter-ego liability and piercing the corporate veil. *See SARN Energy LLC v. Tatra Defence Vehicle as*, No.: N17C-06-355, 2018 WL 5794599, at *6 (Sup. Ct. Del. Nov. 5, 2018); *U.S. KingKing, LLC v. Precision*

30

*Energy Servs.*, 555 S.W.3d 200, 214 (Tex. App. 2018).  Even so, two entities holding themselves out as "one in the same" or as parent/subsidiary does not establish an alter-ego relationship. Proving an alter-ego relationship requires more than "mere dominion and control of the parent over the subsidiary[.]" *SARN Energy*, 2018 WL 5794599, at *6; *U.S. KingKing, LLC*, 555 S.W.3d at 213.

The screenshots Phoenix presents from the cetco.ru/ website include several references to "CETCO's subsidiary company, Coralina Engineering (Russia)" (DN 240-4, at PageID # 4781). Phoenix has not produced evidence that Defendants destroyed website information demonstrating that CETCO and Coralina's parent/subsidiary relationship goes beyond mere ownership or shared management personnel. While the deleted evidence of CETCO and Coralina's parent/subsidiary relationship leads to an inference that more information relevant to alter-ego liability was perhaps deleted from Defendants' websites, the Court cannot make such a large leap when addressing a matter as serious as spoliation. Having failed to meet the relevancy requirement, Phoenix has not established that Defendants' deletion of website information constituted spoliation.[18]

### vi. Evidence of Alter-ego Relationship

Piggybacking on its arguments in the preceding section, Phoenix asserts Defendants must have destroyed evidence defining the relationships between Technology Corp., Trading Corp., and Coralina. Although Defendants claim to be "wholly separate entities" that assisted one another, (DN 240, at PageID # 4708), Phoenix provides emails from a variety of Coralina employees holding themselves out as both Technology Corp. and Trading Corp. employees. (DN 240-13). These Coralina employees' email accounts allegedly use the cetco.ru server, which was

---

[18] The Court notes that Phoenix's Motion for Spoliation Sanctions only argued that the allegedly deleted website information related to its alter-ego liability claims. Phoenix did not argue this evidence was relevant to either its breach-of-contract or KUTSA claims.

Technology Corp.'s website. Phoenix claims it would have been impossible for employees of Coralina, an allegedly separate entity, to use email addresses associated with Technology Corp. without permission. (DN 240, at PageID # 4707, n. 18). Yet Defendants did not produce any documents relating to Defendants' sharing of email servers or Coralina's use of Technology Corp.'s server following its alleged dissolution in 2011. (*Id.*). During the evidentiary hearing, Phoenix also produced a document containing photographed business cards of employees associated with "CETCO Coralina" that Mr. Drake testified he compiled during his business dealings with these entities. Phoenix pointed out these business cards always reference CETCO or CETCO Coralina.

Defendants say Phoenix has not identified any specific document that allegedly existed but was destroyed supporting their alter-ego claims. Defendants submit they have produced contracts and purchase orders that demonstrate "arms-length" purchases and sales of BFPs and related parts involving Trading Corp., Coralina, and Elemet. And corporate-formation documents and financial documents, Defendants emphasize, refute Phoenix's allegations by demonstrating Coralina, Technology Corp., and Trading Corp. were all independent companies. (DN 243-7; DN 243-8; DN 243-11). Defendants conclude any evidence allegedly deleted from their websites "would be insufficient to support a claim for alter-ego."

The compilation of emails and business cards Phoenix submits does not establish spoliation of evidence of alter-ego relationships between the Defendants. While the produced evidence may ultimately support Phoenix's alter-ego liability claims, it does not establish Defendants negligently or intentionally destroyed additional documentation supportive of such claims. This conclusion is bolstered by the undersigned's earlier determination that Phoenix failed to demonstrate that Defendants' deletion of website information constituted spoliation.

C. Sanctions

Having found Coralina negligently destroyed technical documents and communications relating to some of its transactions with Elemet, the Court must determine the appropriate sanctions. Phoenix asks for the "death penalty" sanction of summary judgment in its favor. Alternatively, Phoenix requests an adverse inference at trial regarding Defendants' spoliation. Defendants emphasize that to the extent the evidence falls into Rule 37(e), Phoenix was required to show: (1) it suffered prejudice from the loss of information; or (2) Defendants acted with intent to deprive Phoenix of the alleged missing information's use in this Lawsuit. Fed. R. Civ. P. 37(e). Defendants say Phoenix cannot satisfy either.

Though district courts have broad discretion in crafting appropriate sanctions for spoliation, the sanction must be both fair and punitive. *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 385 (6th Cir. 2013) (citing *Arch Ins. Co v. Broan-Nutone, LLC*, 509 F. App'x 453 (6th Cir. 2012)). Depending on the circumstances of the case, the severity of a sanction for spoliation of evidence may correspond to the party's fault. *Adkins*, 554 F.3d. at 652-53. "Dismissal should rarely be imposed and only when significant prejudice results from the evidence's destruction." *Byrd*, at 386.

An adverse inference, on the other hand, is appropriate where the non-moving party "knew the evidence was relevant to some issue at trial and . . .. [their culpable] conduct resulted in its loss or destruction." *Beaven*, 622 F.3d at 554 (quoting *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (add'l citation omitted)). When the requirements for an adverse inference instruction are met, the district court has the discretion in determining the strength of the inference to be applied. *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013). "Whether an adverse inference is permissive or mandatory is determined on a case-by-case basis, corresponding in part

to the sanctioned party's degree of fault." *Id.* at 178. In addition to the sanctioned party's degree of fault, district courts can consider "the facts and evidentiary posture of the case." *Id.* In *Flagg*, the Sixth Circuit found the sanctioned party's destruction was intentional but only provided a permissive adverse inference because making the inference non-rebuttable would be tantamount to an entry of judgment against the defendant. *Id.* A permissive inference instruction leaves the decision in the hands of the jury. *Id.*

The Court does not find dismissal of the case in Phoenix's favor to be a suitable sanction. While Phoenix alleged Defendants' widespread and wholesale destruction of relevant evidence, it only established the requisite elements of spoliation for one category of documents – Coralina's technical documents and communications related to Elemet transactions. Moreover, Coralina's admitted failure to "appreciate the scope of information relevant to Phoenix's claims" and failure to institute appropriate litigation holds illustrates negligence, rather than purposeful or conscious destruction. The prejudice resulting from this destruction, namely Phoenix's time-consuming efforts at obtaining such evidence and Phoenix's inability to fully pursue its claims, can be remedied by a less severe sanction.

An adverse inference instruction is more appropriate here because Coralina should have known evidence of its transactions and communications with Elemet would be relevant to Phoenix's claims in the litigation and their negligent conduct resulted in its loss or destruction. Defendants feel this type of sanction is far greater than any potential degree of their fault. But, as many courts have noted, a party's neglect in the discovery process leads to serious consequences. *See, e.g., United States v. Florence*, No. 2:13-cv-00035, 2020 WL 1047377, at * 7 (M.D. Tenn. Mar. 4, 2020) (finding that permissive adverse inference instruction levels the evidentiary playing field, deterring "patently negligent conduct by litigants[.]"); *see also Arch Ins. Co. v. Broan-*

*NuTone, LLC*, 509 F. App'x 453, 458-59 (6th Cir. 2012) (citing *Residential Funding Corp.,* 306 F.3d at 108 ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference.") (internal quotation and citation omitted)).

Because Coralina's behavior was negligent, the Court will recommend imposition of a permissive adverse inference regarding its spoliation that will leave the decision in the jury's hands.[19] The jury is then not required to but may infer that Coralina destroyed certain technical documents and communications relating to its transactions with Elemet. This sanction serves both fairness and punitive functions by remedying the prejudice Phoenix endured when forced to depend on Defendants for evidence that would support its claims. *See, e.g., State Farm Fire & Casualty Co. v. Hamilton Beach Brands, Inc.*, No. 5:16-CV-153-TBR-LLK, 2018 WL 1660823, at *5 (W.D. Ky. Apr. 5, 2018) (citations omitted).

To support its request for monetary sanctions, Phoenix explains it has expended significant resources attempting to uncover the missing evidence, including its own investigations in Russia. (DN 240, at PageID # 4722). Phoenix requests recovery of the reasonable attorney's fees it expended by filing two motions to compel (DN 119; DN 182) and the instant motion for spoliation sanctions. (*Id.*).

Throughout the litigation, the Court has declined to impose monetary sanctions on either side despite their failures to comply with discovery obligations and unreasonable delays. (*See* DN 207, at PageID # 4153-54). The Court previously noted that awarding expenses based on the

---

[19] This District has noted that "[w]hile the loss or destruction of evidence is a serious and potentially prejudicial matter, the Court prefers resolution of disputes on their merits while sanctioning any evidence of spoliation and managing the presentation of proof." *Davalos v. D & R Entertainment, Inc.*, 1:20-CV-00067-GNS, 2021 WL 2903238, at * 6 (W.D. Ky. July 9, 2021) (quoting *S.G. Enter., LLC v. Seaboard Paper & Twine*, No. 2:14-CV-3471 WHW CLW, 2015 WL 3630965, at *2 (D.N.J. June 10, 2015); *Dixon v. Ragland*, No. 03 CIV. 0826(LTS)(KN), 2005 WL 2649484, at *3 (S.D.N.Y. Oct. 14, 2005)).

deficiencies from both sides would "tend to cancel each other out and would not be an effective deterrent for future dilatory behavior in this litigation." (*Id.* at PageID # 4154). The circumstances here are distinguishable. Phoenix's Motion for Spoliation Sanctions is a culmination of its exhaustive efforts to obtain discovery from Defendants in this case. Because Phoenix has established the elements of spoliation for one category of documents in this case, the Court finds monetary sanctions to be appropriate and necessary to remedy Phoenix's extensive efforts.[20] But the amount of such monetary sanctions shall be limited to only the reasonable attorney's fees Phoenix incurred in seeking production of technical documents and communications relating to Coralina's transactions with Elemet.

If the District Judge adopts the undersigned's recommendation that monetary sanctions be imposed, Phoenix shall submit a bill of costs for the Court's consideration.

---

[20] This analysis is not affected by Defendants' repeated representations that they "are in dire straits financially" due to the effects of the Russian-Ukraine Conflict. (*See* DN 382, at PageID # 12971-72).

III. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Phoenix's Motion for Spoliation Sanctions

(DN 240) be **GRANTED IN PART** and **DENIED IN PART** to the extent identified in this Report

and Recommendation.

**IT IS FURTHER RECOMMENDED** that the Court provide a permissive adverse-

inference instruction relating to Coralina's spoliation to the jury at trial as follows:

> The jury will be instructed that it may presume that technical documents and communications related to Coralina's transactions with Elemet were in Coralina's control and that Coralina had a duty to preserve such evidence.
>
> The jury may presume that Coralina breached that duty by allowing these technical documents and communications to be destroyed.
>
> The jury may presume that the information contained in these technical documents and communications would have supported Phoenix's breach of contract and KUTSA claims and would have been adverse to Coralina's defenses.

**IT IS FURTHER RECOMMENDED** that Defendants' Objection/Request for Leave to

File Sur-Reply (DN 255) be **DENIED.**

July 18, 2022

Regina S. Edwards, Magistrate Judge
United States District Court

NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn,* 728 F.2d 813 (6th Cir.), *aff'd,* 474 U.S. 140 (1984).

Copies:       Counsel of Record